Ross D. MARGRAVES, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 14–97–00271–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Aug. 16, 2001.

David H. Berg, Geoffrey Alan Berg, Jeff Joyce, Bridget Ourdie, John L. Hill Jr., James E. Essig, Gene L. Locke, Houston, for appellants.

Bill R. Turner, Bryan, Matthew W. Paul, Austin, for appellees.

Panel consists of Justices SEARS, CANNON, and DRAUGHN.*

## OPINION ON REMAND

JOE L. DRAUGHN, Justice (Assigned).

■ Ross Margraves appealed from his conviction for misuse of state property, a third degree felony. In our original opinion, *Margraves v. State*, 996 S.W.2d 290 (Tex.App.—Houston [14th Dist.] 1999), we reversed his conviction based on the unconstitutionality of the Penal Code provision under which he was prosecuted, as well as the legal insufficiency of the evidence. The State petitioned the Court of Criminal Appeals for review, and that court reversed our decision on both grounds and remanded back to us for consideration of the remaining points of error.[1] *See Margraves v. State*, 34 S.W.3d 912 (Tex.Crim.App.2000).

---

\* Senior Justices Ross A. Sears, Bill Cannon, and Joe L. Draughn sitting by assignment.

1. In our original opinion, we held former Penal Code § 39.01 (see Act of June 19, 1983, 68th Leg., R.S., ch. 558, § 7, 1983 Tex. Gen. Laws 3237, 3241, *renumbered and amended by* Acts 1993, 73rd Leg., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3586, 3673), to be unconstitutionally vague in that it failed to provide fair warning as to whether criminal liability attaches when a state official engages in "mixed use" of state property, *i.e.*, a use that provides both a benefit to the State as well as a personal benefit obtained at no additional cost to the

Margraves' original points of error were as follows: (1) that the evidence was legally insufficient to support the conviction for misuse of state property; (2) that former Penal Code § 39.01 is unconstitutionally vague; (3) that there existed a fatal variance between the indictment and the jury charge; (4) that the evidence was insufficient to support the indictment or the charge; (5) that the trial court erred in including certain special instructions in the jury charge and in refusing to include others; (6) that the trial court erred in allowing the State to reserve its entire closing argument for rebuttal; (7) that the trial court erred in denying the motion for new trial because previously unknown evidence was discovered after trial; and (8) that the trial court erred in refusing to hold that civil liability is the exclusive remedy for misuse of state aircraft. In its opinion, the

Court of Criminal Appeals addressed points one and four, concerning sufficiency of the evidence, and point two, concerning the constitutionality of the statute, and held against Margraves on each issue. *Id.* at 919–21. In our original opinion, we additionally considered point of error number three, alleging a fatal variation, and overruled it. *See Margraves,* 996 S.W.2d at 304.

On remand, we must consider the remaining points of error, numbers five through eight. We reluctantly affirm the conviction.

## I. Factual Nutshell

In 1993, Margraves was Chairman of the Texas A & M Board of Regents. On August 4, 1993, he took a trip on an A & M system aircraft to Baton Rouge, Louisiana.

State. *See Margraves,* 996 S.W.2d at 304; *see also Cain v. State,* 855 S.W.2d 714, 717–18 (Tex.Crim.App.1993). The Court of Criminal Appeals, however, declined to address the issue of whether the statute is vague in this regard and decided instead that the evidence was legally sufficient to support a jury finding that Margraves did not have a legitimate State business purpose for his trip (mixed use or not). *See Margraves,* 34 S.W.3d at 921. This appears to be putting the cart before the horse. If the statute, and hence the jury charge which tracks the statute, is unconstitutionally vague regarding whether a state official can be convicted for a mixed use, then it is entirely possible that the jury believed it could convict Margraves even if his use of the aircraft was a mixed use.

The Court of Criminal Appeals states that: "[v]iewed in the proper light, the evidence was that the appellant's use had no genuine government purpose ..." and "[w]e defer to the jury's factual finding on the question of whether his trip was for personal or official business." *See id.* at 916 and 921 (respectively). The jury, however, did not expressly make such a determination. The statute prohibits, and the jury found, a "misapplication of state property." Whether or not "misapply" in this context encompasses "mixed usage" appears to this panel to be vague.

We are certainly cognizant of the fact that to succeed in challenging the constitutionality of a penal provision, a defendant, generally, must demonstrate that the provision is unconstitutional in application to his conduct rather than that the provision may be unconstitutional if applied to others. *See Bynum v. State,* 767 S.W.2d 769, 772 (Tex.Crim.App. 1989). But the use of the legal sufficiency standard of review to determine when a statute is unconstitutionally vague in regard to specific conduct does not seem appropriate, and our research has revealed that it is not the analytical method of choice for Texas courts. *See, e.g., Lewis v. State,* 984 S.W.2d 732, 735 (Tex.App.—Fort Worth 1998, pet. ref'd)(finding no evidence in the record to support appellant's factual contentions regarding his own conduct). In the present case, there was certainly at least some evidence to show a mixed use, and we would suggest that such evidence was substantial. *Assuming for the moment that the statute, and hence the charge, is vague, how can an appellate court examine the record for evidence legally sufficient to support the verdict when the import of the verdict avoids understanding?* Hopefully, the Court of Criminal Appeals can add clarity to this issue in the future.

Margraves contends that the purpose of the trip was to meet with the president of Louisiana State University to discuss, among other things, the potential for A & M to join the Southeastern Conference. While at LSU, Margraves attended his son's graduation ceremony as a special guest of the university. Margraves was convicted of misuse of the state aircraft. Pursuant to an agreement, the trial court assessed punishment at four years confinement probated for four years, a $3,000 fine, and $1,435 in restitution for the use of the aircraft.

## II. Analysis

### A. The Special Instructions

Under point of error five, Margraves makes a plethora of contentions alleging error in the court's submission of special instructions in the jury charge. Margraves complains: (1) that the inclusion of the special instructions created a fatal variance between the indictment and the jury charge; (2) that the trial court erred in submitting the special instructions because the instructions are erroneous; (3) that the court erred in refusing to include in the special instructions language from an Attorney General's opinion regarding spousal travel; and (4) that, as submitted, the special instructions constituted an improper comment on the weight of the evidence.

### 1. Fatal Variance

In his first subpoint, Margraves contends that the inclusion of the special instructions created a fatal variance between the indictment and the jury charge. This is same assertion that Margraves made in his third point of error, and he offers no new argument and cites no new authority under this subpoint. We considered and overruled point of error number three in our prior opinion based on Margraves' failure to object to the charge on the basis of a fatal variance. *See Margraves,* 996 S.W.2d at 304–05. We, therefore, overrule this subpoint as well.

### 2. Erroneous

Next, Margraves argues that even if there was not a fatal variance, the instructions were erroneous as a matter of law. He highlights as problematic the following paragraph from the instructions:

The Board of Regents of the Texas A & M University System was authorized by the Legislature to pay for necessary and reasonable expenses for transportation from these funds only when the purposes of the travel clearly involved official state business, was consistent with the legal responsibilities of the Texas A & M University System, and, for travel outside the State of Texas, the travel was approved in advance in accordance with the policies of the Board of Regents of the Texas A & M University System.

This language was adapted from Article V, § 13(4) of the 1991 Appropriations Act. See Appropriations Act, 72nd Leg., 1st C.S., ch.19, § 13(4), 1991 Tex. Gen. Laws 1012. Section 13 is entitled "General Travel Provisions." Margraves contends that this provision is in conflict with § 20 of Article V, which is entitled "Aircraft." Section 20(1) states: "This sub-section shall apply only to state-owned aircraft and shall be the only appropriation authority therefor." On the basis of this language, Margraves contends that the general travel requirements in § 13(4) do not apply when the travel is onboard a state-owned aircraft.

Additionally, Margraves points out that § 20(1)(j) specifically lists certain criteria for transportation by state aircraft, but these criteria do not include the requirement in § 13(4), and reproduced in the special instructions, that "for travel outside the State of Texas, the travel [must be] approved in advance in accordance with

the policy of the employing state agency." He then suggests that in listing such specific requirements in § 20(1), including one that is also found in § 13(4), i.e. that the travel must involve official state business, the legislature further indicated its intent that § 13(4) should not apply to travel onboard state aircraft.

Margraves correctly points out that when a specific provision and a general provision genuinely conflict with one another, the specific provision should be read as controlling over the general provision or as creating an exception to the general provision. *See* TEX. GOV'T CODE ANN. § 311.026(b) (Vernon 1998). However, whenever possible, the courts should attempt to harmonize any apparent conflict between two provisions so that both laws are given effect and the full legislative intent is preserved. *See id.* § 311.026(a); *Burke v. State,* 28 S.W.3d 545, 546–47 (Tex.Crim.App.2000); *Cheney v. State,* 755 S.W.2d 123, 126 (Tex.Crim.App.1988). We find that the two provisions at issue in this case, § 13(4) and § 20(1), can be harmonized so that each is given effect in this situation.

We first note that the two provisions are under the same "Travel Regulations" subheading of the same statute. See Appropriations Act, 72nd Leg., 1st C.S., ch.19, §§ 12–20, 1991 Tex. Gen. Laws 1011–22. Section 13 of the statute is entitled "General Travel Provisions" and then each trav-

el section thereafter (§§ 14–20) has a more specific title, *e.g.,* "Transportation Expenses," "Moving Expenses ...," "Aircraft." This arrangement suggests that § 13 applies across the board as an overlay to all the other travel sections.

■ The heart of Margraves contention is that § 20(1) states it is the "only appropriation authority" for state-owned aircraft, and therefore, § 13(4) cannot apply to expenditures concerning state-owned aircraft. The real question then is whether the statement in § 20(1) expresses an intent by the legislature for the general provisions of § 13(4) to not apply to travel by state aircraft. Read strictly, § 13(4) does not grant any authority to use a state aircraft or appropriate or expend funds for such use and so its application is not directly excluded by the statement in § 20(1).[2] Section 13(4) simply sets forth an additional requirement of preapproval when transportation, even by a state-owned aircraft, is to an out-of-state destination. No provision of § 20 even addresses out-of-state travel.[3]

Margraves further suggests that § 13(4) should be limited in its application to sections specifically dealing with "transportation, meals, lodging, and incidental expenses," as is recited in § 13(4). He points out that § 14 is titled "Transportation Expenses" and § 15 is titled "Expenses for Meals and Lodging." However,

---

**2.** Indeed, the term "appropriation" is particularly relevant in discussing § 2, as most of its subsections deal with expenditures of funds to maintain, operate, or replace aircraft, or to buy insurance or reimburse for the use of state owned aircraft. Only subsection (j) deals with the criteria for use of the aircraft.

**3.** We further note that there is no expressed or apparent public policy reason why the legislature would want to require preapproval for those flying outside Texas via a commercial airlines but would not want to require the same condition for travel on state-owned aircraft. Similarly, § 13(6) of the Appropriations Act requires advance written approval from the governor for travel outside "the United States and its possessions." Margraves' interpretation of § 20(1) as exclusive would lead to the unusual situation wherein a person wishing to fly to Baton Rouge on Southwest Airlines would have to obtain preapproval, but a person traveling to the Bahamas on a state-owned aircraft would not need such approval.

the use of state-owned aircraft contemplated by § 20(1) also clearly involves "transportation," and § 20(1)(j) even uses the term. Furthermore, the legislature certainly understood how to prevent the application of other sections to § 20 when that was its intent. The definitional section of the Travel Regulations, § 12, specifically limits its application to "Sections 12–18." Also, § 19, concerning "Vehicular Equipment," states in its title, "(Excluding Aircraft)." Section 13 has no such express indication of inapplicability to § 20.

We acknowledge that there is a certain amount of ambiguity involved in attempting to discern the legislative intent in regard to the application of these provisions. It is not necessarily unreasonable to interpret the statement in § 20(1), that it is the "only appropriation authority" for state-owned aircraft, as exempting transport by such aircraft from the requirements of § 13(4). However, the Code Construction Act mandates that we should attempt to harmonize any apparent conflict between two provisions so that both provisions are given effect. *See* TEX. GOV'T CODE ANN. § 311.026(a); *see also Cheney*, 755 S.W.2d at 126 ("effect will be given to all the provisions of each act if they can be made to stand together and have concurrent efficacy"). These provisions are part of the same legislative scheme to regulate state-related travel, and the better interpretation is that § 13(4) imposes an additional preapproval requirement on out-of-state travel, even when that travel is by state-owned aircraft.

 Furthermore, even if there was error in the charge in submitting the preapproval language, we find that such error in this case would have been harmless. If error in the jury charge was the subject of a timely objection, then reversal is required if the error was calculated to injure the rights of the defendant. *Ovalle v.*

*State*, 13 S.W.3d 774, 786 (Tex.Crim.App.2000)(citing TEX.CODE CRIM. PROC. ANN. Art. 36.19 (Vernon 1981) and *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1984)). This means no more than that there must be some harm to the accused from the error. *Id.* In other words, an error that has been properly preserved by objection will not call for reversal so long as the error is harmless. *Id.* The actual degree of harm must be assessed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole. *Id.* The harmfulness of error in the jury charge should be measured, at least in part, against the likelihood that the jury's verdict was based upon an available alternative theory of culpability that was not affected by the erroneous portions of the charge. *Atkinson v. State*, 923 S.W.2d 21, 27 (Tex.Crim.App.1996).

The jury charge in the present case asked whether Margraves misapplied an A & M aircraft. It defined "misapply" as meaning "to apply wrongly or to misuse or spend *without proper authority*" (emphasis added). Margraves suggests that the "without proper authority" language meant that the jury could convict him for failing to get preapproval for the out-of-state trip when such approval was not required. However, the charge read as a whole and the evidence presented at trial does not support this contention. The charge clearly allowed the jury to convict Margraves for his personal use of the aircraft, irrespective of any preapproval requirement. Also, in its legal sufficiency analysis, the Court of Criminal Appeals did not so much as mention the failure to obtain preapproval, yet found the evidence sufficient to sustain the conviction. *See*

*Margraves,* 34 S.W.3d at 917–19. Furthermore, our own review of the record reveals that the preapproval requirement was simply not an issue in the trial court proceedings. Margraves himself testified that he told "pretty much everybody on the board" what he was planning to do, and two fellow regents testified that the board was aware of the trip and, essentially, no one disapproved and the trip was considered official business. Additionally, the board officially approved of his trip expenses after he returned. Margraves points to no place in the record, and we have found none, wherein the State proffered contradictory evidence on this issue; nor did the State mention the issue in closing argument. Even if the court erred in submitting the preapproval language to the jury, such error was harmless. *See Ovalle,* 13 S.W.3d at 786. This subpoint is overruled.

### 3. Attorney General's Opinion

In his third subpoint, Margraves contends that the trial court erred in denying his request to include language from an Attorney General's opinion regarding spousal travel. He specifically points to the following language from the opinion:

> The nature and duties of the office, the traditional role, if any, of the office holder's spouse, the purpose of a particular trip and the spouse's connection with that purpose are factors relevant to the determination that there is an official purpose in a particular case.

*See* Op. Tex. Att'y Gen. No. H–1089 (1977). It was undisputed at trial that Margraves' spouse accompanied him on the trip to Baton Rouge. He contends that an instruction was necessary on this issue because without it the jury was left to speculate as to "the proper rules governing spousal travel" and the appropriate legal standards to apply thereto.

■ The trial judge is required to deliver to the jury a "written charge distinctly setting forth the law applicable to the case." Tex.Code Crim. Proc. Ann. Art. 36.14 (Vernon 1981). The purpose of the charge is to inform the jury of the applicable law and to guide it in applying the law to the facts of the case. *Hutch v. State,* 922 S.W.2d 166, 170 (Tex.Crim.App.1996). A charge that adequately protects an accused's rights, although not applying the law to the facts as preferred by him, is sufficient if the jury could have acquitted him under it, had they believed his version of the facts. *Graves v. State,* 968 S.W.2d 386, 388 (Tex.App.—Tyler 1997, pet. ref'd); *see also Miller v. State,* 940 S.W.2d 810, 812 (Tex.App.—Fort Worth 1997, pet. ref'd)(trial court's refusal to submit requested instruction is not reversible error if the charge contains the essential substance of the defensive issues raised by the evidence and adequately protects the defendant's rights). A jury charge which tracks the language of a particular statute is a proper charge on the statutory issue. *Riddle v. State,* 888 S.W.2d 1, 8 (Tex.Crim. App.1994); *see also Rosillo v. State,* 953 S.W.2d 808, 815–16 (Tex.App.—Corpus Christi 1997, pet. ref'd); *McGowan v. State,* 938 S.W.2d 732, 738 (Tex.App.— Houston [14th Dist.] 1996, no pet.)(both holding it was sufficient for the charge to correctly state the law by tracking the applicable penal statutes).

■ The language for Margraves' requested instruction comes from an Attorney General's opinion. *See* Op. Tex. Att'y Gen. No. H–1089. He cites no statutory or case law to support the inclusion of the instruction and we have found none. While Attorney General's opinions can be persuasive, they are not binding on the courts. *Ex parte Schroeter,* 958 S.W.2d 811, 812 n. 2 (Tex.Crim.App.1997). The State draws our attention to Attorney

General Opinion MW 93, which specifically refers to H 1089 and says that it "must be limited to its facts." *See* Op. Tex. Att'y Gen. No. MW–93 (1979). It does not appear then that even the Attorney General's office considers H 1089 to be a generally appropriate statement of the law regarding spousal travel.

The court's charge sufficiently tracks the language of the relevant Penal Code provision and Appropriations Act sections. The charge adequately provided the jury with an abstract legal basis on which to understand the application of the law to the facts. *See Plata v. State*, 926 S.W.2d 300, 302 (Tex.Crim.App.1996)(failure to give an abstract instruction of the law is reversible error only when such instruction was necessary to complete the understanding of concepts in the application part of the charge).

■ Furthermore, even if the court erred in refusing to include an instruction on spousal travel, we find that such error was harmless. The actual degree of harm must be assessed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole. *Ovalle*, 13 S.W.3d at 786. The charge mentions Margraves' spouse in only place, where it states "the value of an airplane flight for he and his wife." Our review of the record further mandates the conclusion that Margraves was tried and convicted of misapplying the state aircraft for his personal use and not for taking his wife on the trip with him. *See Atkinson*, 923 S.W.2d at 27 (harmfulness should be measured against likelihood that verdict was based on alternative theory not affected by the erroneous portions of the charge). The thrust of the State's case at trial was the personal motive for the trip. There was no evi-

dence offered to show that her presence on the trip caused the State any additional expense. Further supporting our analysis is the fact the Court of Criminal Appeals found that the evidence was legally sufficient to support the conviction based on the purpose for Margraves' trip and apparently without regard to the fact that Margraves' wife accompanied him on the trip. *See Margraves*, 34 S.W.3d at 917–19.

Furthermore, the instructions in the charge stated that "for travel outside the State of Texas, the travel [must be] approved in advance in accordance with the policies of the Board of Regents of the Texas A & M University System." A copy of the A & M system travel regulations was offered into evidence as State's Exhibits 1 and 1a. Section 7 of the regulations contains rules for "Use of System Aircraft." Subsection 7.4 is entitled "Travel of Spouses of State Employees" and contains substantially the same language as the Attorney General's opinion. Therefore, the jury was specifically directed by the instructions to the very language requested by Margraves. In other words, even though he was not legally entitled to a specific instruction on spousal travel, he, in effect, received exactly that. Any error in omitting the spousal travel instruction was harmless. We overrule this subpoint.

### 4. Improper Comment

■ In his last subpoint, Margraves contends that the special instructions constituted an improper comment on the weight of the evidence. Specifically, he asserts that if the trial court was intent on submitting certain travel related provisions from the Appropriations Act and the State Aircraft Pooling Board Act, then the court should have included *all* of the travel related provisions in the acts. Margraves, however, failed to segregate or specifically identify the provisions that he wanted the court to include, and he failed to either

submit the requested instructions in writing or dictate them into the record. *See* Tex.Code Crim. Proc. Ann. Art. 36.15 (Vernon 1981). Additionally, his request was so vague and over-broad as to fail to apprise the court of the nature of the alleged omission in the court's charge. *See Francis v. State*, 36 S.W.3d 121, 123 (Tex.Crim.App.2000)(citing *Stone v. State*, 703 S.W.2d 652, 654 (Tex.Crim.App.1986)). Margraves has, therefore, waived this argument.

■ Furthermore, the "Travel Regulations" section of the Appropriations Act alone covers nine sections and 12 pages of the General Laws; it includes provisions relating to motor vehicles, personally owned aircraft, expenses for meals and lodgings, moving expenses, etc. Even if Margraves had properly requested this instruction in writing or by dictation, including all of these irrelevant provisions would have unnecessarily complicated the charge and probably would have confused the jury. *See* Tex.Code Crim. Proc. Ann. Art. 36.14 (Vernon 1981)(the judge shall deliver a "written charge distinctly setting forth the law applicable to the case"); *Carrillo v. State*, 889 S.W.2d 501, 503 (Tex.App.—Houston [14th Dist.] 1994, no pet.)("court is not required to charge on an issue not raised by the evidence"); *see also Lewis v. State*, 676 S.W.2d 136, 143 (Tex.Crim.App. 1984)("the better charging practice is to limit the definitional paragraphs to the portions of the statute applicable to the allegations in the indictment"); *Dean v. State*, 995 S.W.2d 846, 850 (Tex.App.—Waco 1999, pet. ref'd)(defendant charged with evading detention was not entitled to instructions concerning evading arrest). We fail to see, and Margraves fails to explain, how instructing the jury on rele-

vant law, but refusing to instruct the jury on irrelevant issues, constitutes an improper comment on the evidence; particularly since the portion of the charge he objects to does not even reference any particular evidence. *See Atkinson*, 923 S.W.2d at 24. Accordingly, we overrule this subpoint. Since each of the included subpoints are overruled, we overrule point of error number five.

**B. Closing Argument**

■ Margraves next contends that the trial court erred in allowing the State to reserve its entire closing argument for rebuttal. He argues that the trial court exceeded its authority under article 36.07 of the Texas Code of Criminal Procedure and deprived him of his right to due process. In its closing, the State argued that "the crux of this case ... is that we can spend funds if it's necessary, if it's reasonable and if it clearly involves State business. We can't spend funds if it clearly involves State business, but it's not reasonable." Margraves asserts that he was harmed by not being able to respond to this argument in his own closing remarks.[4]

■ Article 36.07 states, in its entirety: "The order of argument may be regulated by the presiding judge; but the State's counsel shall have the right to make the concluding address to the jury." Tex.Code Crim. Proc. Ann. Art. 36.07 (Vernon 1981). There is clearly nothing on the face of the statute that requires the prosecution to open closing argument. *Nelson v. State*, 828 S.W.2d 185, 187 (Tex.App.—Houston [14th Dist.] 1992, pet. ref'd).

In *Norris v. State*, 902 S.W.2d 428 (Tex. Crim.App.1995), *cert. denied*, 516 U.S. 890, 116 S.Ct. 237, 133 L.Ed.2d 165, the State waived its opening argument at the

---

4. Margraves also appears to some extent to contend that this was improper jury argument. However, he failed to object to the argument on that basis so any such improprieties are waived. *See McFarland v. State*, 928 S.W.2d 482, 510 (Tex.Crim.App.1996).

close of both stages of trial, the appellant argued, and the State then closed. The appellant requested, but was denied, the opportunity to rebut the State's closing remarks. On appeal, the appellant claimed the court's refusal to allow rebuttal rendered his trial fundamentally unfair. In overruling the related points of error, the Court of Criminal Appeals tersely explained that: "This Court has resolved appellant's contentions adversely to him. *See, e.g., Martinez v. State,* 501 S.W.2d 130, 132 (Tex.Cr.App.1973), *appeal dism'd for want of a substantial federal question,* 415 U.S. 970, 94 S.Ct. 1547, 39 L.Ed.2d 863 (1974); *Young v. State,* 374 S.W.2d 891, 892 (Tex.Cr.App.1964)." *Norris,* 902 S.W.2d at 442. The court, however, went on to examine the appellant's bill of exception, which purportedly included the arguments that his counsel would have made if given the opportunity. The bill did nothing to change the court's mind regarding the trial court's denial of rebuttal argument. *See id.*

 The procedure employed in the present case is substantially similar to that occurring in *Norris,* with the exception of the fact that Margraves did not offer a bill of exception that would have allowed us to consider any rebuttal arguments that may have been made (although it is unclear from *Norris* whether the contents of such a bill could ever lead to a reversal). The contentions made in the two cases are also substantially similar. Norris complained that the trial court's denial of rebuttal rendered his trial fundamentally unfair, as essentially does Margraves. Accordingly, we find that the trial court did not abuse its discretion in allowing the State to waive its opening and in refusing to give Margraves the opportunity to rebut the State's closing remarks. *See id.; Nelson,* 828 S.W.2d at 187.

Margraves additionally suggests that the court should look for guidance to Rule 269 of the Texas Rules of Civil Procedure, which requires the party with the burden of proof to open argument, and Rule 29.1 of the Federal Rules of Criminal Procedure, which requires the prosecution to open. *See* Tex.R. Civ. P. 26; Fed. R.Crim.P. 29.1. But, given the clarity of the language in article 36.07, we see no need to look to any inapplicable rule for guidance. The Court of Criminal Appeals has, in fact, specifically rejected the notion that Rule 269 applies in criminal cases. *See Brown v. State,* 475 S.W.2d 938, 957 (Tex.Crim.App.1971). Furthermore, to the contrary of Margraves' contention, the fact that these provisions specifically require a certain party to open, weighs heavily in favor of reading the straightforward language of 36.07 as not including any such requirement. If the legislature intended the State to be required to open the closing arguments, it could have easily indicated that intention. This point of error is overruled.

## C. Newly Discovered Evidence

 In his seventh point of error, Margraves contends that the trial court erred in denying his motion for new trial because evidence discovered after the conclusion of the trial could have affected the jury's determination. Alternatively, he claims that there was prosecutorial misconduct in that the State allowed the false testimony to go uncorrected.

During trial, Mary Nan West, the then current Chairwoman of the A & M Board of Regents, testified, *inter alia:* (1) that it was not her practice to seek reimbursement from the university, even when she could, and (2) that she drives to Board of Regents meetings. Margraves contends that after trial he discovered evidence tending to prove that both of these statements were untrue. He further contends

that this new evidence of falsity mandates a new trial because of the importance of West's testimony to the State's case. Margraves maintains that the State used West's testimony regarding her travel and reimbursement practices to contrast against Margraves' allegedly unreasonable practices, and, hence, evidence of the falsity of her statements goes to the heart of the State's case.

The requirements for obtaining a new trial upon newly discovered evidence are: (1) the newly discovered evidence was unknown to the appellant at the time of trial; (2) the appellant's failure to discover the evidence was not due to his own lack of diligence; (3) the materiality of the evidence is such as would probably bring about a different result in another trial; and (4) the evidence is admissible and not merely cumulative, corroborative, collateral, or impeaching. *Moore v. State,* 882 S.W.2d 844, 849 (Tex.Crim.App.1994); *State v. Nkwocha,* 31 S.W.3d 817, 820 (Tex. App.—Dallas 2000, no pet.). Unless the defendant satisfies all four requirements, he is not entitled to a new trial. *See Wilson v. State,* 633 S.W.2d 351, 352 (Tex. App.—Corpus Christi 1982, no pet.). Motions for new trial on grounds of newly discovered evidence are disfavored by the courts and viewed with great caution. *See Drew v. State,* 743 S.W.2d 207, 225 (Tex. Crim.App.1987); *Manley v.. State,* 28 S.W.3d 170, 173 (Tex.App.—Texarkana 2000, pet. ref'd). A new trial is never allowed for the purpose of obtaining evidence that was known and accessible to the defendant at the time the cause was tried, and this is true even if the defendant had knowledge of the evidence but failed to communicate it to his attorney. *See Drew,* 743 S.W.2d at 227 n. 14.

Margraves claims that, after West testified, he submitted an open records request to the A & M General Counsel's office seeking copies of all reimbursement requests by A & M regents over a six year period, as well as copies of travel account statements. Upon reviewing the responsive documents, Margraves' counsel learned that West sought reimbursement in connection to a trip she took just two weeks before Margraves' ill-fated trip to Baton Rouge. Margraves further maintains that his counsel also learned after trial that West had used an A & M aircraft 28 times to travel either to or from board meetings.

Regarding reimbursements, the letter attached to the open record responses from Genevieve G. Stubbs, A & M Associate General Counsel, and attached as an exhibit to Margraves' motion for new trial, points out that there was only one travel voucher showing direct reimbursement to West (over a six year period). This voucher is for $140 in taxi cab rides. One of the attached vouchers shows a significant cost incurred by A & M to send several regents, including West and Margraves, to Mexico, but Stubbs' letter and the voucher itself indicate that West reimbursed the state for her portion of the trip.

The evidence demonstrating that West sought and received reimbursement on one occasion does little to contradict her testimony that it was her practice to not not seek reimbursement even when she could. According to Webster's, a "practice" is a "[f]requently repeated or customary action; habitual performance; a succession of acts of a similar kind; usage; habit; custom; as, the practice of rising early; the practice of making regular entries of accounts; the practice of daily exercise." WEBSTER'S REVISED UNABRIDGED DICTIONARY (1996). Missing from the definition is a denotation or connotation of "always." Indeed, the evidence uncovered by Margraves, if anything, supports West's testimony regarding her practice of

not submitting requests for reimbursement because it reveals only one instance of direct reimbursement in six years of being a regent.

Furthermore, in an affidavit attached to the response to the motion for new trial, West reiterated that her practice is to not seek reimbursement, and she stated that, in six years as a regent, the only reimbursement she can recall receiving came after Margraves turned in the receipt. It can hardly be imagined that such testimony would probably bring about a different result in a new trial. *See Moore*, 882 S.W.2d at 849.

Turning to the issue of mode of travel to board meetings, Margraves pins his argument on the following exchange between the prosecutor and West:

Q. That's how you go to Board of Regents, drive?

A. Yes, yes.

Margraves suggests that the evidence establishing that West used an A & M system plane on twenty-eight occasions demonstrates that her testimony regarding her transport to board meetings was untruthful. In her affidavit, West explained that she took the prosecutor's question to be present tense, as it appears to be, and she answered it accordingly. She further states that if anyone had asked if she had ever flown to a board meeting, she would have answered "yes." And then she adds, "I quit flying to board meetings when I found out how much the flights cost." Again, it is difficult to see how such testimony or evidence would help Margraves' case in a new trial. Contrary to his assertion, it does not demonstrate any untruthfulness on West's part, nor does it significantly lessen the impact her testimony may have had on the jury. If anything, it demonstrates that she used the aircraft for purely A & M business (board meetings) and that she halted her use when she

discovered how much it was costing the system. Although the records span from 1991–1996, Margraves admits that West's 28 trips occurred from 1991–1994, thus lending credence to her assertion that she stopped using the aircraft while still a regent. This evidence heightens the contrast drawn by the prosecution between West's conduct and that of Margraves.

Furthermore, the record does not support the proposition that this evidence was unknown to Margraves at the time of West's testimony. Margraves' defense team had copies of the relevant flight manifests in the courtroom. Thus, they not only had the evidence but they had also apparently already identified it as important. Furthermore, West stated in her affidavit that Margraves himself possessed personal knowledge that she used the plane to attend board meetings as he accompanied her on such a trip. *See Drew*, 743 S.W.2d at 227 n. 14 (new trial cannot be had when the evidence was known by the defendant, but he failed to communicate it to his attorney).

The evidence was not unknown to the defendant at the time of trial, and the evidence does little or nothing to suggest that a different result would be reached by a jury in a new proceeding. *See Moore*, 882 S.W.2d at 849. Furthermore, the record does not establish that West spoke any falsities from the witness stand. The trial court properly denied Margraves' request for a new trial based on the supposed discovery of new evidence and the alternative theory of prosecutorial misconduct for the failure to correct inaccurate testimony. Accordingly, we overrule this point of error.

### D. Civil Liability as Sole Remedy

Last, Margraves contends that the trial court erred in allowing the State to prosecute under a general criminal statute, *i.e.*,

Act of June 19, 1983, 68th Leg., R.S., ch. 558, § 7, 1983 Tex. Gen. Laws 3237, 3241, *renumbered and amended by* Acts 1993, 73rd Leg., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3586, 3673 (former Penal Code § 39.01(a)(2)), when a more specific statute, *i.e.*, Acts 1965, 59th Leg., ch. 510, § 2, 1965 Tex. Gen. Laws 1025, *repealed by* Acts 1993, 73rd Leg., ch. 268, § 46(1), 1993 Tex. Gen. Laws 986 (former TEX.REV.CIV. STAT. ANN. Art. 6252–15), imposed solely civil liability for the misuse of state-owned aircraft.[5] Margraves argues that the statutes provide conflicting remedies and, in such a case, the more narrowly drawn provision, former Art. 6252–15, should control over the general provision, former § 39.01(a)(2).

However, we need not address the substantive merits of Margraves' argument because there simply is no conflict between the two statutes in this case. *See Cheney*, 755 S.W.2d at 126 (when possible, statutes should be interpreted such as to avoid conflicts in application). Former Art. 6252–15 prohibited the use of state-owned aircraft for "political purposes." In fact, the Revisor's Note following the new version of the provision specifically states that: "It is clear from its context that the source law is limited to matters involving the use of aircraft for political purposes." *See* TEX. GOV'T CODE ANN. § 2205.037, revisor's note. Margraves was charged and convicted of using a Texas A & M system aircraft for personal use, and that personal use, attendance at his son's graduation, cannot be considered "political" under the statute.[6] There is no conflict. We, therefore, overrule this point of error.

5. Margraves mistakenly cites to the current versions of these provisions, *i.e.*, TEX. PEN.CODE ANN. § 39.02(a)(2) (Vernon 1994) and TEX. GOV'T CODE ANN. § 2205.037 (Vernon 2000).

The judgment of the trial court is affirmed.

6. The statute does not define "political." Webster's defines it as "[o]f or pertaining to public policy, or to politics; relating to affairs of state or administration." WEBSTER'S REVISED UNABRIDGED DICTIONARY (1996).