COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT WORTH

 

 

                                        NO.
2-07-183-CR 

    



 

FRANCISCO DEGADILLO                                                       APPELLANT

A/K/A FRANCISCO
DELGADILLO

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

           FROM THE
372ND DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                                       ------------

I. 
Introduction

In two issues, Appellant Francisco Degadillo a/k/a
Francisco Delgadillo appeals his conviction for burglary of a habitation.[2]  We affirm. 

 








II. 
Factual and Procedural History

Degadillo and Filiberto Gorostieta shared a house in Fort Worth for several
months in 2005.  About 1:00 a.m. on
December 2, 2005, two weeks after Degadillo had moved out of the house, two men
broke into the house.  Filiberto
identified one of the men as Degadillo. 
According to Filiberto, Degadillo had a baseball bat.  The two men told Filiberto that they would
kill him if he did not give them money. 
Filiberto gave the men his wallet, and they left. 

A jury found Degadillo guilty of burglary of a
habitation, and the trial court sentenced him to prison for ten years and one
day.  This appeal followed.

III. 
Jury Selection

In his first issue, Degadillo claims that the trial
court erred because after the jury panel was dismissed and the jurors were
sworn in, the court substituted a juror who had previously been dismissed for a
disqualified juror.  Degadillo concedes
that he requested and complied with this procedure, but he suggests that the
procedure was Afundamental, jurisdictional error that
could not be waived, even with [the] consent of [Degadillo].@ The
State alternatively argues that Degadillo is estopped from complaining about
the trial court=s actions by the Ainvited
error@ doctrine, that Degadillo did not preserve
error, or that any error was harmless.

 








A. Standard of Review

The doctrine of Ainvited
error,@ as distinguished from a waiver of error,
is a type of estoppel.  Prystash v.
State, 3 S.W.3d 522, 531 (Tex. Crim. App. 1999), cert. denied, 529 U.S.
1102 (2000).  This doctrine estops a
party from making an appellate error of an action that it induced.  Id.  As the Texas Court of Criminal Appeals has
explained,

Waiver
might usefully be distinguished from what is sometimes called >invited error.=   If a party affirmatively seeks action by the
trial court, that party cannot later contend that the action was error.  This is not really a waiver of error
previously committed.  Rather, it is part
of the definition of what can constitute error, and quite reasonably defines
error of which a party may complain as excluding those actions of the trial
court actually sought by the party in that tribunal.

  

Id.  In Prystash, the court applied the
doctrine to a jury charge error at the punishment stage of a capital murder
case.  Id. at 529B32.








In another decision, the Texas Court
of Criminal Appeals applied the doctrine to a case with some similarities to
the case before us today.  Jones v.
State, 119 S.W.3d 766, 784 (Tex. Crim. App. 2003), cert. denied, 542
U.S. 905 (2004).  There, the appellant
argued that the trial court=s
discharge of a juror was inappropriate under the Texas Code of Criminal
Procedure.  Id. 
The court noted that even though the appellant had argued to the trial
court that discharge would be inappropriate, he nevertheless proposed discharge
as an alternative to mistrial at least three times.  Id.  Thus, the court concluded that because the
appellant had requested the discharge as an alternative to mistrial, he was
estopped from complaining about it on appeal. 
Id.

Finally, in another case, the Texas
Court of Criminal Appeals applied the doctrine to an error that the appellant
claimed was fundamental.  Druery v.
State, 225 S.W.3d 491, 505B06 (Tex.
Crim. App.), cert. denied, 128 S. Ct. 627 (2007).  There, the appellant, who was convicted of
capital murder, complained that the trial court should have instructed the jury
on the lesser included offense of first-degree murder and that the failure to
include such an instruction was Afundamental
error.@  Id. at 505.  The court first observed the general rule
that if there was no proper objection to an alleged jury charge error, then the
appellant must claim that the alleged error was fundamental, and he can obtain
a reversal only if there was Aegregious
harm.@  Id.  The court then noted, however, the doctrine
of invited error.  Id. at 505B06.  Thus, because the appellant, through his
attorney, had Aaffirmatively requested@ that the
instruction on the lesser included offense not be given, he was estopped on
appeal from claiming that it was error.  Id. at 506.  Therefore, the court did not address whether
the failure to give the instruction on the lesser included offense was error or
had Aegregious[ly] harm[ed]@ the
appellant.  Id.                        








The doctrine of invited error has
been previously applied by this court.[3]  In one case, we applied it to an illegal
sentence for which the defendant had entered into a plea bargain with the
State.  Ex parte Shoe, 137 S.W.3d
100, 101B03 (Tex. App.CFort
Worth 2004), pet. dism=d, 235
S.W.3d 782 (Tex. Crim. App. 2007). 
Because the defendant had requested the sentence and accepted the
benefit of not having a fine assessed against him, we held that he was Aestopped
from challenging the illegal sentence because he accepted the benefits of it.@  Id.
at 102B03. 


 








In another case, the defendant
filed a motion to recuse the trial judge in his case because the same trial
judge had signed the arrest and search warrants for the defendant and had
subsequently determined the existence of probable cause.  Franks v. State, 90 S.W.3d 771, 779 (Tex. App.CFort
Worth 2002, no pet.).  Judge Gill
testified at the recusal hearing, and the judge who presided over the hearing
denied the defendant=s motion
to recuse.  Id. at 779B80.  The defendant subsequently moved for Judge
Gill to reconsider his ruling on a previous suppression motion and called Judge
Gill to testify at the hearing on the defendant=s
motion.  Id. at 780.  When Judge Gill refused to do so, the
defendant introduced into evidence Judge Gill=s
testimony from the recusal hearing.  Id.  On appeal, the defendant argued, based on the
introduction of Judge Gill=s
testimony into evidence, that his conviction was void because a judge who
presides over a proceeding is prohibited from being a witness in that
proceeding.  Id. at 780B81.  We held that the defendant was estopped from
complaining on appeal about the admission of testimony that he had requested,
and we observed that the doctrine of invited error applies Awhether
or not the error is perceived to be fundamental.@  Id.
at 781B82.[4]  








B. 
Analysis 

After the State, Degadillo, and the
trial court had asked questions of the veniremembers and made final selections,
the trial court announced the twelve jurors and excused the panel from the
courtroom.  The trial court then briefly
spoke to the jurors and excused them for the day.  As the jurors exited the courtroom, one of
them told the trial court that his religion would not let him find someone
guilty of a crime.

After the trial court and Degadillo=s
attorney questioned the juror at some length, the trial court told the State
and the defense that he could get another veniremember back, if they wanted her
on the jury.  Degadillo=s
attorney stated, AI=d rather
have 12,@ and the State replied, AI got no
problem with that.@  The veniremember was brought to the bench,
and after she agreed to be on the jury, the trial court swore her in. 








The trial court then discussed with
counsel what had happened.  He stated
that it was his Alegal position that [the original
veniremember] is not legally qualified to serve under 35.16.  Does anyone have any argument with that as a
matter of law?@ 
Degadillo=s attorney answered, ANo,
Judge,@ and the State answered, AState
does not.@ 
The following exchange then took place:

[Trial
Court:]  For legal purposes, I=ve brought inCI=ve excused Juror 13
because I had brought back Juror 38 who would have been No. 12, the next in
order. . . . And I=ve been requested by the parties to swear her and
proceed with a jury of 12 if the law allows.  Is that
correct, State?

 

[State:]  Yes.

[Trial Court:]  Is that correct, Defense?

[Defense:]  Yes, Your Honor.

[Trial
Court:]  And both sides are
specifically requesting to have her sworn belatedly, and I=ll reswear the whole panel
in the morning before any testimony.

 

[State:]  That=s fine.

[Trial
Court:] And the parties are requesting that I do that.  Is that correct, State?

 

[State:]  State is.

[Defense:]  That=s fine,
Your Honor.

[Trial
Court:]  And, Defense, I assume the
parties are objecting to going forward with just 11 since 12 came back so
promptly and thinks it=s going to be fixed by just swearing the panel again
since there=s been no testimony or evidence and I didn=t even read the blue card.  Is that the position of the State for now?

 

[State:]  Yes, for now, yes.

[Trial Court:]  And the Defense?








[Defense:]  Yes.

[Trial
Court:]  And both sides understand if we
go on with 12, it is my considered opinion that any Court with a conscience and
that follows the spirit of the law would say if you wanted to complain, you
should have complained before the 12th juror . . . was placed on the panel or
you would be forever barred from doing so since it was done at your
request.  Is that the way you would
interpret the law, [State]?

 

[State:]  Yes.

[Trial Court:]  Defense?

[Defense:]  I think so, Your Honor.  The one thing I would like to do with No. 12
in the morning is maybe ask her a question or two if she discussed the case or
anything after she left before she took the oath.

 

[Trial Court:]  Are they still back there?

[Defense:]  Yes.

[Trial
Court:]  Let=s do it now.  I need her right back out here real
quick.  [Emphasis added.]  

 

The trial court then had the juror brought
back into the courtroom and asked her some questions about whether she had
heard or discussed anything about the case after the court had excused the
panel; the juror said that she had not.  
      The next day, the following
exchange took place:








[Trial Court:]  At the close of
proceedings yesterday, we had the unusual event where a juror, or a chosen
juror, instead of go[ing] from the jury box to the jury room with his 11
companions walked straight up to the bench and states a legal disqualification
from service.  That record is pretty
clear, and it doesn=t need to be re‑invented at this time.  And the parties did state they were in
agreement the juror was not qualified, and was disqualified, to serve.

 

Had the trial commenced, there are cases that say[] a major
disqualification can be a disability from service in the same manner as a
medical condition or any other matter that happens.  State=s agreed to
proceed with 12.  The Defense has
requested to go on with 12.  And at
their request, I summoned the next juror in line who would have served
according to the clerk=s list after strikes were made and Juror 38 came
up to replace Juror 13.  And the State
said they did not object to the procedure. 
The Defense said they specifically didn't object to the procedure and
objected to going on with 11 at this point in the proceedings because as it
was, in their opinion, it was not required. 
And everyone has agreed or requested to plug Juror 38 into the hole
created by the disability or disqualification of Juror 13.  The only person I didn=t ask if they=re okay with
this was the Defendant.

 

And since it is your trial, Mr. Delgadillo, do you request to go
forward with 12 and  have that other
juror plugged in to fill the gap made by Juror 13?

 

[Defendant:] Yes, sir.

[Trial Court:]  And you
agreed and asked me to follow your lawyer's request to proceed with 12 instead
of just go on with 11; is that correct?

 

[Defendant:]  Yes, sir.

[Trial Court:]  I did some
research over the evening, and I had a little bit of concern of the legal benchmark
that=s used for
jeopardy purposes about the jury being sworn in a jury trial is when jeopardy
attaches versus the first witness testifies in a bench trial.  And I got so wrapped up in jeopardy law I
didn=t look at
general law.

 








And general law states the order of trial in Article 36.01 of the Code
of Criminal Procedure.  And 36.01, which
states the order of trial, says a trial shall proceed in the following order:  Number one, the  indictment or information shall be read;
number two, pleas are entered.  Even
though the jury was sworn, and I do believe as a matter of constitutional law
means jeopardy is attached, the trial hadn=t started.  Parties haven=t announced
ready after the jury was impaneled, the indictment hadn=t been read, no
pleas had been entered.  So the Court=s opinion under
36.01, the trial actually hadn=t started, just the jury selection process is
concluded.  Both sides comfortable with
that interpretation for purposes of the hearing today?

 

[Defense:]  Yes, Your Honor.

[State:]  Yes, for today, yes.

[Trial Court:]  And 36.29, which
talks about proceeding with 11 instead of 12. 
Says not less than 12 can render a verdict concurred by each juror,
signed by the foreman.  But it says after
the trial of a felony case begins and then a juror becomes disabled from
sitting as determined by the judge or dies, then you can go on with 11.  But the Court=s position of
36.29, after the trial begins means after the indictment is read and the plea
is entered, looking at 36.01.

 

So for our generic term of Atrial begins,@ that is a ‑‑
the trial begins for the Court and the lawyers basically when you hear
pretrials and pick juries and do a lot of other things.  But for statutory purposes of 36.29, which
talks about after the trial begins, if it didn=t originally
refer to the fact that after the jury has started working and doing their jobs,
it would be absurd to believe it could apply to the  earlier proceedings like voir dire because
there wouldn=t be 12 people
to have to lose one and go on with 11.  

 








So the plain reading of the statute, in my opinion, means that the
trial has not begun for purposes of the number of jurors.  Parties have agreed, and the Defense has
specifically requested, to replace the other juror since the trial hasn=t begun and
doesn=t believe the
Court is bound by the go‑on‑with‑11 procedure.  And with that reading of the statute and
based on the request of the Defendant, I=m going to honor
their request based on the literal reading of the statute.

 

I will state, however, it is still my position, and I assume, Mr.
Henderson, it would be yours, that if it were to turn out the Court=s judgment is
interpreted as legally incorrect at some future date,  you and your client would be hard‑pressed
to complain about getting a remedy that you asked for, fought for and turned
out were not legally entitled to.  And I
would expect this would be a dead issue on appeal.  Would that be your opinion?

 

[Defense:]  Probably would
be, Judge, but it wouldn=t permit ‑‑ if there=s an appellate
lawyer that wanted to take this appeal, I don=t think it would
keep them from trying to fight it.

 

[Trial Court:] And I guess that=s my point as
well, but I guess my point is, if there is a complaint, I consider this to be a
waiver.

 

[Defense:]  I think so, too, Your Honor.

[Trial Court:]  And does your
client understand that as well that ‑‑ Mr. Delgadillo, if some
other lawyer wants to say, no, you should have gone on with 11 or started over,
my opinion, by saying I want to go on now with the 12 people, some other court
is not likely to give you any relief because you asked to get this extra juror
to have 12 and you can=t complain later about having 12 instead
of 11.  They will say you can=t have your cake
and eat it, too.  You can=t complain about
things that you requested as opposed to complaining about those that were
forced upon you over your objection.  Do
you understand what I=m saying?

 

[Defendant:]  Yes, sir.

[Trial Court:]  And so there
is a risk to going on with 12, as you=ve said, in case
it turns out the law says we should have gone on with 11.  You are getting an extra juror at your
request who will have to vote guilty before you can be convicted.  So now 12 instead of 11 people will have to
agree.  So one more person will have to
agree before you can be convicted.  Do
you understand that?








[Defendant:]  Yes, sir.

[Trial Court:]  And you
consider that an advantage such that, if necessary, you will waive your right
to complain about not having 11 people decide your fate.  Do you understand that?

 

[Defendant:]  Yes, sir.

[Trial Court:]  And, Counsel,
you concur with what I just told your client as a matter of practical law?

 

[Defense:]  Yes, sir. 
[Emphasis added.]








Despite the trial court=s
discussion of waiver, and despite Degadillo=s
assertion that he Aattempted
to waive any complaint about a [twelfth] juror after the first twelve . . .
jurors had been seated and sworn and one of the twelve sworn jurors was
disqualified,@ this is not a case of waiver; instead, it
is an obvious case of invited error.  The
emphasized portions of the exchanges above make clear that both Degadillo and
his attorney explicitly requested that the trial court substitute the excused
veniremember for the disqualified juror and that they explicitly agreed with
the trial court=s decision to do so.  That is, since Degadillo and his attorney
actually requested the procedure for replacing the disqualified juror, the doctrine
of invited error estops Degadillo from now complaining about the trial court=s
actions, even if those actions were Afundamental
error.@  See
Prystash, 3 S.W.3d at 531; Druery, 225 S.W.3d at 505B06; Norton
v. State, 116 Tex. Crim. 48, 50, 31 S.W.2d 1087, 1088 (1930) (noting that A[a] litigant on appeal or writ of error may not seek a reversal for error
which he himself has committed or invited, even though
the error is fundamental@); Franks,
90 S.W.3d at 781.  We overrule Degadillo=s first
issue.   

IV. 
Closing Argument

In his second issue, Degadillo
argues that the trial court erred by overruling his request that the State make
an opening argument at the conclusion of the guilt-innocence phase of the
trial.  At that phase of the trial, after
both sides rested, the trial court read the charge to the jury.  The trial court asked whether the State intended
to open with a closing argument, and the State said, AState
will waive opening, reserve right to close.@  The defense requested that the State be
required to make a Afull
opening statement@ and
asserted that case law required it, though the defense could provide no
authority for that assertion.  The trial
court stated, AIn the absence of authority which mandates
it, I=m going to allow them to waive opening.@  The defense then made its closing argument,
and the State followed with its closing argument.      

A. Standard of Review








The code of criminal
procedure provides that A[t]he
order of [the] argument may be regulated by the presiding judge; but the State=s
counsel shall have the right to make the concluding address to the jury.@  Tex.
Code Crim. Proc. Ann. art. 36.07 (Vernon 2007).  We reverse a trial court=s
decision on such matters only if there was an abuse of discretion.  See, e.g., Threadgill
v. State, 146 S.W.3d 654, 673 (Tex. Crim. App. 2004) (holding that
the trial court did not abuse its
discretion by denying the defendant=s request
to close arguments); Margraves v. State, 56 S.W.3d 673, 684 (Tex. App.CHouston
[14th Dist.] 2001, no pet.) (holding that the trial court did not abuse its
discretion by allowing the State to waive its opening and by refusing to give
the defendant an opportunity to rebut the State=s closing
remarks).    B. Analysis

Although Degadillo argues that the
State should be required to make an opening argument at the close of the
guilt-innocence phase of trial, he nevertheless concedes that Aexisting
authority is against him on this issue.@  He is correct.








Margraves is
directly on point.  In that case, the
defendant argued that the trial court erred by allowing the State to reserve
its entire closing argument for rebuttal. 
56 S.W.3d at 683.  But the
appellate court noted that A[t]here
is clearly nothing on the face of [art. 36.07] that requires the prosecution to
open closing argument@ and also
noted the similarity between the case before it and an earlier decision from
the Texas Court of Criminal Appeals.  Id. at 683B84
(citing Norris v. State, 902 S.W.2d 428 (Tex. Crim. App.), cert.
denied, 516 U.S. 890 (1995)).[5]  The court observed that, unlike the appellant
in Norris,  the defendant had not
offered a bill of exceptions, but the case was otherwise Asubstantially
similar@ to Norris in that each defendant
essentially contended that the trial court=s denial
of rebuttal rendered his trial Afundamentally
unfair.@  Id. at 684.  Thus, the court concluded that the trial
court did not abuse its discretion by allowing the State to waive its opening
and by refusing to allow the defendant an opportunity to rebut the State=s closing
arguments.  Id. 








Degadillo=s
argument is Asubstantially similar@ to the
arguments made by the defendant in Margraves, and, as in Margraves,
Degadillo did not offer a bill of exception, nor did he specify any harm that
would come from the State not having made an opening argument.  Thus, we conclude that the trial court did
not abuse its discretion, and we overrule Degadillo=s second
issue.[6]

V.  Conclusion

 

Having overruled
both of Degadillo=s issues, we affirm the trial court=s judgment.

 

BOB MCCOY

JUSTICE

 

PANEL B:   LIVINGSTON,
DAUPHINOT, and MCCOY, JJ.

 

PUBLISH

 

DELIVERED: June
26, 2008

 











[1]See Tex. R. App. P. 47.4.





[2]See Tex. Penal Code Ann. ' 30.02(a) (Vernon 2003).





[3]Other courts of appeals
have applied the doctrine to a variety of situations in the last few
years.  See, e.g., Schultz v.
State, No. 04-07-00035-CR, 2008 WL 182877, at *2 (Tex.
App.CSan Antonio Jan. 23, 2008, no pet.)
(applying the doctrine to a defendant=s agreement to a ten-year
felony sentence in exchange for the State=s agreement not to refile
two misdemeanor cases as felonies); Morales v. State, 222 S.W.3d 134,
143B44 (Tex. App.CCorpus Christi 2006, no
pet.) (applying the doctrine to a defendant=s failure to request that
a child witness be interviewed via closed‑circuit television at the time
of trial); Russell v. State, 146 S.W.3d 705, 715B16 (Tex. App.CTexarkana 2004, no pet.)
(applying the doctrine to a trial court=s denial of a mistrial
based on a juror=s response to a question
by defense counsel); Orona v. State, 52 S.W.3d 242, 248B50 (Tex. App.CEl Paso 2001, no
pet.) (applying the doctrine to the trial court=s failure to
include prior convictions in the application paragraph of the jury charge
because the defendant invited the error through objections to the introduction
of the stipulation before the jury and any mention of the prior convictions in
the jury charge); Hirad v. State, 14 S.W.3d 351, 351B52 (Tex. App.CHouston [14th Dist.] 2000,
pet. ref=d) (applying the doctrine
to a defendant=s request for a specific
issue in a jury charge).





[4]In an unpublished decision
from this court, an appellant complained that his Sixth Amendment right to
confrontation and cross-examination had been violated because the trial court
had considered a presentence investigation report, which he had requested,
during the sentencing phase of his trial. 
Hamlin v. State, Nos. 02-04-00240-CR, 02-04-00241-CR,
02-04-00242-CR, 2005  WL 3436523, at *1 (Tex. App.CFort Worth Dec. 15, 2005,
no pet.) (mem. op.) (not designated for publication).  We rejected the defendant=s argument for several
reasons, including the doctrine of Ainvited error.@  Id.





[5]In Norris, too, the
State did not make a closing argument until after the defendant made his.  902 S.W.2d at 442.  The trial court denied the defendant=s request to rebut the
State=s arguments, and the
defendant offered bills of exceptions showing what he would have argued had he
been permitted to answer the State=s arguments.  Id.  The defendant argued on appeal that the trial
court had erred by refusing to allow him to rebut the State=s closing arguments.  The Texas Court of Criminal Appeals rejected
his argument, noting that his bills of exceptions did not show that his trial
was Afundamentally unfair.@  Id.





[6]Degadillo argues that the
rules of civil procedure recognize 

 

in civil cases involving
money damages that fundamental fairness requires a full opening of the case by
the party with the burden of proof.  It
is an abuse of discretion by the Trial Court in a criminal case where life and
liberty are at stake, to have a lesser standard.

 

He fails to
recognize, however, that the rules of civil procedure and the code of criminal
procedure have very different requirements for arguments.  See Tex.
R. Civ. P. 269; Tex. Code Crim.
Proc. Ann. art. 36.07.  Because
this is a criminal case, our decision must be based on the latter, which does
not require the State to open.