Affirmed and Memorandum Opinion filed October 7, 2004









Affirmed and Memorandum Opinion filed October 7, 2004.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-00510-CR

NO. 14-03-00511-CR

NO. 14-03-00512-CR

NO. 14-03-00513-CR

____________

 

ALVA ZANE MCGRATH,
JR.,
Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 179th
District Court

Harris County, Texas

Trial Court Cause Nos. 881,224,
940,494, 940,495, & 940,496

 



 

M E M O R A N D U M  O P I N I O N

The jury convicted appellant Alva Zane
McGrath, Jr., of two counts of aggravated sexual assault of a child and two
counts of indecency with a child.  See
Tex. Pen. Code Ann. '' 21.11, 22.021
(Vernon 2003 & Supp. 2004).  After
finding an enhancement true, the jury assessed punishment at life imprisonment
for each of the two aggravated sexual assault charges and ninety-nine years
confinement for each of the indecency charges. 
The court granted the State=s motion to
cumulate the sentences; thus, appellant was sentenced by the court to 398 years
confinement.  Appellant raises eight
points of error on appeal.  We affirm. 








Factual Background

In the Summer of 1999, M.M., the
complainant=s mother, moved into appellant=s home.  M.M. had three children from her prior
marriage, and she had custody of the children every other week for one week at
a time.  Appellant owned a two-bedroom
house with one bathroom and an attached garage. 
The three children shared a room that was partitioned by a bookshelf,
which allowed M.M.=s nine-year-old daughter, K.M., to have
her own separate space from her two younger brothers.  In February 2001, M.M. and the children moved
out of appellant=s house, but M.M. and appellant continued
their relationship.  

In June 2001, M.M. and her three children
went to appellant=s house for dinner.  M.M. began preparing dinner, but was unable
to finish because she had a severe headache. 
At approximately 8:00 that evening, M.M. laid down in appellant=s bed to help ease
her headache, leaving appellant to finish preparing dinner.  While her mother slept, K.M. played with
appellant=s cats in his garage.  Appellant came into the garage and led K.M.
to the washing machine located nearby. 
Appellant then picked up K.M., set her on the washing machine, and removed
her shorts and panties.  K.M. testified
that appellant began licking her vagina. 

The following day, K.M. told her
grandmother appellant had Amessed with her
cookie,@ which was K.M.=s nickname for her
genitals.  After K.M. relayed the events
to her mother that evening, M.M. took K.M. to the police station and to the
emergency room for an examination.  A
couple of days later, K.M. gave a statement to the Children=s Assessment
Center, relating the events that occurred at appellant=s house.  








A few days later, Officer Joe Stevens, an
investigator with the Pasadena police department, questioned appellant
regarding K.M.=s allegations.  During the questioning, appellant denied the
allegations, but did admit he was interested in thirteen and fourteen-year-old
girls.  Thereafter, appellant was
arrested for aggravated sexual assault of a child.  When appellant was arrested, Officer Stevens
requested appellant=s consent to search his home.  Appellant agreed, and Officer Stevens,
accompanied by another officer, proceeded to appellant=s house.  After appellant was unhandcuffed, Officer
Stevens read appellant the consent form and then allowed appellant to read the
form before signing.  Appellant signed
the consent form, and the officers proceeded to search appellant=s home.  They recovered over seven hundred
pornographic images, a majority of which depicted children. 

Fearing she may get into trouble, K.M. did
not divulge other sexual acts by appellant until approximately a year and a
half later, when the State contacted K.M. to inquire about whether appellant
had taken any photographs of her.  K.M.=s stepmother
questioned K.M. about whether there was anything else she wanted to talk
about.  K.M. then admitted appellant had
sexually assaulted her on other occasions. 
As a result of the new allegations, K.M. was taken to the Children=s Assessment
Center to give another statement.  

Based on both of her statements, appellant
was indicted for two counts of aggravated sexual assault of a child and two
counts of indecency with a child.  The
four indictments alleged the following:

1.                 
On or about June 11, 2001, appellant caused the sexual
organ of K.M. to contact his mouth;

2.                 
On or about July 7, 2000, appellant penetrated K.M.=s sexual organ with his sexual organ;

3.                 
On or about July 7, 2000, appellant engaged in sexual
contact by touching her genitals;

4.                 
On or about July 7, 2000, appellant engaged in sexual
contact by touching her breasts.  

During trial, K.M. detailed
nine specific events involving sexual activity between her and appellant.  The trial lasted several days, after which
the jury found appellant guilty of all four charges.  Appellant now challenges his conviction by
eight points of error. 

 

 

 








Discussion

I.          Legal & Factual Sufficiency

In his fourth point of
error, appellant challenges the legal and factual sufficiency of the evidence
to support the verdict.  Appellant
specifically alleges in this point of error that (1) the convictions are based
on legally insufficient evidence in violation of the Sixth and Fourteenth
Amendments to the United States Constitution; and (2) the convictions are based
on factually insufficient evidence in violation of Article I, Sections 10 and
19, of the Texas Constitution. 
Appellant, however, fails to cite any authority or provide any argument
regarding how the federal and state constitutions were violated.  See Rhoades v. State, 934 S.W.2d 113,
119 (Tex. Crim. App. 1996) (holding appellant must cite specific legal
authority to support argument); King v. State, 17 S.W.3d 7, 23 (Tex.
App.CHouston
[14th Dist.] 2000, pet. ref=d)
(stating that without supporting citations to relevant legal authority and
application of that authority to the facts, conclusory argument is insufficient
to preserve error).  Accordingly, because
appellant failed to present adequate briefing on these points of error, we will
not address the legal and factual sufficiency of the evidence with regard to
specific constitutional provisions.  See
Tex. R. App. P. 38.1(h).  However, because we must consider every
subsidiary issue fairly included, we will address whether the evidence is
legally and factually sufficient to support the verdict.  Tex.
R. App. P. 38.1(e).  

When reviewing a legal
sufficiency claim, we review the evidence in a light most favorable to the
verdict in order to determine whether any rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt.  Johnson v. State, 23 S.W.3d 1, 7 (Tex.
Crim. App. 2000).  Whether the evidence
is legally sufficient is determined as a matter of law; thus, if the evidence
is legally insufficient, the case should never have been submitted to the jury.  Oldham v. State, 5 S.W.3d 840, 844
(Tex. App.CHouston
[14th Dist.] 1999, pet. ref=d).  The same standard applies regardless of
whether the state presents direct or circumstantial evidence.  Huntley v. State, 4 S.W.3d 813, 814
(Tex. App.CHouston
[1st Dist.] 1999, pet. ref=d)
(en banc).  








In conducting a factual
sufficiency review, we view all of the evidence in a neutral light, without
favoring either party.  Johnson,
23 S.W.3d at 6B7.  We begin the factual sufficiency review with
the presumption that the evidence supporting the jury=s
verdict is legally sufficient.  Clewis
v. State, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996).  We will set aside the verdict only if (1) the
evidence supporting the verdict, considered by itself, is too weak to support
the finding of guilt beyond a reasonable doubt, or (2) contrary evidence, if
present, is strong enough that the beyond-a-reasonable-doubt standard could not
have been met.  Zuniga v. State,
No. 539-02, 2004 WL 840786, at *7 (Tex. Crim. App. Apr. 21, 2004); see
Zuliani v. State, 97 S.W.3d 589, 593B94
(Tex. Crim. App. 2003); Johnson, 23 S.W.3d at 11.  When reviewing the evidence, we must give
appropriate deference to the jury findings in order to prevent intruding on the
fact finder=s role as
the sole judge of the weight and credibility of the evidence.  Johnson, 23 S.W.3d at 7.  Therefore, unless the record clearly reveals
a different result is appropriate, we Amust
defer to the jury=s
determination concerning what weight to give contradictory testimonial evidence
because resolution often turns on an evaluation of credibility and demeanor.@ 
Id. at 8. 

A person commits the offense
of aggravated sexual assault if he intentionally or knowingly causes the
penetration of a child=s
female sexual organ by any means or causes the penetration of a child=s mouth by the sexual organ of the
actor if the child is under fourteen years of age.  Tex.
Pen. Code Ann. '
22.021(a)(1)(B)(i), (ii) (Vernon Supp. 2004). 
A person commits the offense of indecency with a child if he engages in
sexual contact with a child under the age of seventeen.  Tex. Pen. Code Ann. ' 21.11(a), (1) (Vernon 2003).  ASexual
contact@ is defined
under section 21.11(a)(1) as Aany
touching by a person, including touching through clothing, of the anus, breast,
or any part of the genitals of a child@
if committed with the intent to arouse or gratify the sexual desire of any
person.  Tex. Pen. Code Ann. '
21.11(c)(1).  Here, appellant contends
the evidence is legally and factually insufficient because the complainant=s testimony was unbelievable and was
impeached by logistical conflicts and inconsistencies.  We disagree.  









In sexual abuse cases, the testimony of
the child victim alone is sufficient to support the conviction.  Ruiz v. State, 891 S.W.2d 302, 304
(Tex. App.CSan Antonio 1994, pet. ref=d); Karnes v.
State, 873 S.W.2d 92, 96 (Tex. App.CDallas 1994, no
pet.).  Here, K.M. testified appellant
licked her genitals, had sex with her on more than one occasion, made her
perform oral sex on him, touched her breasts, and touched his penis to her
genitals.  Specifically, the first
conviction for aggravated sexual assault is supported by K.M.=s testimony that
appellant licked her genitals while they were in his garage.  The second conviction for aggravated sexual
assault required the state to prove appellant had sexual intercourse with
K.M.  K.M. testified to three separate,
specific occasions when appellant had sexual intercourse with her.  The third conviction for indecency with a
child is supported by either K.M.=s testimony that
appellant placed his penis against her genitals or that appellant digitally
penetrated her.  K.M. also testified that
appellant touched her breast just before having sex with her, which is
sufficient to support the fourth conviction. 
Thus, K.M=s testimony alone is sufficient to
establish the legal sufficiency of the evidence to support each
conviction.  Accordingly, we hold the
evidence is legally sufficient to support appellant=s convictions for
aggravated sexual assault and indecency. 

We now consider whether the evidence is
factually sufficient to support appellant=s
convictions.  As previously detailed,
K.M. testified appellant licked her genitals, had sex with her on more than one
occasion, made her perform oral sex on him, touched her breasts, and touched
his penis to her genitals.  K.M. also
testified appellant would show her pornographic movies and ask her to perform
those types of acts with him.  When
appellant was arrested, he denied having possession of any pornographic
materials, but the police recovered 786 pieces of pornography, a majority of
which represented children.  Further,
appellant gave a statement to police indicating his preference for young
girls.  In his statement, appellant also
claimed he did not initiate any sexual acts with K.M.; rather, appellant
claimed K.M. instigated the activity by calling him into the shower to show him
her vagina and trying to put his hand down to her private parts.  








On appeal, appellant contends K.M.=s testimony was
inconsistent because her trial testimony detailed more acts than previously
claimed at the Children=s Assessment Center.  Appellant claims these inconsistencies
rendered her testimony unbelievable. 
Appellant also argues that because there was no physical medical
evidence, K.M.=s allegations were fabricated.  Appellant=s contentions,
however, attack the weight of the evidence, not its sufficiency.  The jury is the sole judge of the credibility
of the witnesses and the weight to be given the evidence; thus, the jury is
entitled to believe or disbelieve all or part of a witness=s testimony.  Jones v. State, 944 S.W.2d 642, 647B48 (Tex. Crim.
App. 1996).  Viewing the evidence in a
neutral light, we cannot say the evidence of guilt, considered by itself, is
too weak to support the finding of guilt beyond a reasonable doubt or the
contrary evidence is strong enough that the beyond-a-reasonable-doubt standard
could not have been met.  Therefore, we
hold the evidence is factually sufficient to support the jury=s findings of
guilt.  Accordingly, we overrule
appellant=s fourth point of error.

II.       Voir
Dire

In his first point of error, appellant
contends the trial court erred in denying him the opportunity to reopen voir
dire in order to question a juror selected to serve on the panel.  Appellant argues the trial court=s actions deprived
him of a fair and impartial jury in violation of the Sixth and Fourteenth
Amendments of the United States Constitution and Article I, Section 10 of the
Texas Constitution.  








At the end of voir dire, the trial court
announced the names of the twelve members of the jury and named one
alternate.  Shortly thereafter, a
selected juror, Juror Number 19, requested to speak with the court.  Outside the presence of the jury, Juror
Number 19 stated he was certain his presence would not be beneficial to the
court because he was very sheltered and considered this type of crime very
shocking.  The court asked Juror Number
19 if there was anything specifically about appellant that was objectionable,
to which Juror Number 19 responded negatively. 
The court then asked Juror Number 19 if he could apply the presumption
of innocence to appellant.  Juror Number
19 responded, AI don=t know.  I=m questioning all
of it right now because I was picked.@  Shortly thereafter, appellant=s counsel asked
the court if she could Aintervene,@ but the court
denied her request.  Appellant now claims
that denial violated his right to a fair and impartial jury. 

The trial court=s decision to
restrict voir dire is reviewed for an abuse of discretion.  Sells v. State, 121 S.W.3d 748, 755
(Tex. Crim. App. 2003).  A trial court
abuses its discretion when it prohibits a proper question about a proper area
of inquiry.  Id. at 755B56.  To preserve error regarding the manner of
voir dire, appellant must show that he was prevented from asking particular
questions that were proper.  Id.
at 756; Caldwell v. State, 818 S.W.2d 790, 794 (Tex. Crim. App. 1991), overruled
on other grounds by Castillo v. State, 913 S.W.2d 529, 533-34 (Tex. Crim.
App. 1995); S.D.G. v. State, 936 S.W.2d 371, 380 (Tex. App.CHouston [14th
Dist.] 1996, pet. denied).  Appellant
contends that asking the court to intervene was sufficient to preserve his
complaint on appeal.  We disagree.  

To preserve his complaint, appellant must
detail to the court the particular question that he wished to ask Juror Number
19.  As we previously stated in Godine
v. State: 

A trial court should not be
expected to separate the wheat from the chaff, cull out potentially valid
subject matters from overly broad topic descriptions, and anticipate the form
in which a specific question emanating from a topic will be asked.  To preserve error, it behooved Godine to (1)
present to the trial court specific questions formulated in the manner they
were to be asked, and (2) obtain an adverse ruling.  Godine failed to present the trial court with
information in a format suitable for efficient judicial review.  Godine thereby failed to preserve error.

Godine v. State, 874 S.W.2d 197, 200B01 (Tex. App.CHouston [14th
Dist.] 1994, no pet.) (citations omitted). 
Here, because appellant failed to present a specific question to the
trial court regarding Juror Number 19, he has failed to properly preserve this
issue on appeal.  Accordingly, we
overrule appellant=s first point of error.  

III.      Cruel
& Unusual Punishment








In his second point of error, appellant
contends his sentences constitute cruel and unusual punishment, prohibited by
(1) the Eighth Amendment of the United States Constitution; (2) Article I,
Section 13 of the Texas Constitution; and (3) article 1.09 of the Texas Code of
Criminal Procedure.[1]  With regard to the Texas Constitution and the
Texas Code of Criminal Procedure, appellant=s brief fails to
provide any arguments, cite any relevant authority, or apply such relevant
authority to the specific facts of this case. 
See Tex. R. App. P.
38.1(h); Rhoades, 934 S.W.2d at 119; King, 17 S.W.3d at 23.  Accordingly, we hold this issue, as it
relates to Article I, Section 13 of the Texas Constitution and article 1.09 of
the Texas Code of Criminal Procedure, is waived.

Additionally, appellant contends Section
12.42(c)(2)(B)(v) of the Texas Penal Code,[2]
the enhancement provision, violates (1) the Eighth Amendment of the United
States Constitution; (2) Article I, Section 13 of the Texas Constitution; and
(3) article 1.09 of the Texas Code of Criminal Procedure.  Appellant, however, fails to provide any
analysis or cite any authority in support of his challenge to the constitutionality
of Texas Penal Code Section 12.42(c)(2)(B)(v). 
Accordingly, because appellant failed to adequately brief this subissue,
his challenge to the constitutionality of Section 12.42(c)(2)(B)(v) is waived.  Tex. R.
App. P. 38.1(h); Rhoades, 934 S.W.2d at 119; King, 17
S.W.3d at 23.   








Thus, the only remaining subissue of
appellant=s second point of error concerns whether
his sentences violate the Eighth Amendment=s prohibition
against cruel and unusual punishment. 
The Eighth Amendment, which is applicable to the states by virtue of the
Fourteenth Amendment, requires that a state criminal sentence be proportionate
to the crime for which the defendant has been convicted.    U.S.
Const. amend. VIII; Solem v. Helm, 463 U.S. 277, 290 (1983); Baldridge
v. State, 77 S.W.3d 890, 893 (Tex. App.CHouston [14th
Dist.] 2002, pet. ref=d). 
This prohibition against grossly disproportionate punishment survives
under the Eighth Amendment apart from any consideration of whether the
punishment assessed was within the statutory range.  Id. 
In conducting an Eighth Amendment analysis, we must first compare the
gravity of the offense against the severity of the sentence to determine if the
sentence was grossly disproportionate to the offense.  McGruder v. Puckett, 954 F.2d 313, 316
(5th Cir. 1992).  If the sentence is
grossly disproportionate, we must then compare that sentence to sentences
imposed for similar crimes in the same and other jurisdictions.  Id. 
Punishment will be considered grossly disproportionate only when an
objective comparison of the gravity of the offense against the severity of the
sentence reveals the sentence to be extreme. 
Hicks v. State, 15 S.W.3d 626, 632 (Tex. App.CHouston [14th
Dist.] 2000, pet. ref=d).

We should be reluctant to review
legislatively mandated terms of imprisonment. 
Solem, 463 U.S. at 290.  We
must grant substantial deference to the broad authority legislatures
necessarily possess in determining the types and limits of punishments for
crimes; thus, a reviewing court will rarely be required to engage in an
extended analysis to determine that a sentence meets constitutional
muster.  Id. at 290 &
n.16.  Accordingly, successful challenges
to the proportionality of particular sentences should be exceedingly rare.  Rummel v. Estelle, 445 U.S. 263, 272 (1980).[3]  Such extreme cases may arise Aif a legislature
made overtime parking a felony punishable by life imprisonment.@  Id. at 274 n.11.   








The United States Supreme Court has also
recognized that harsher punishments are constitutionally permissible for those
who have shown that they are incapable of complying with the criminal laws
defining the norms of society.  Rummel,
445 U.S. at 276.  Additionally,
recidivist statutes, such as Texas Penal Code section 12.42, seek to deter
repeat offenders, and for those who do repeat, segregate that person from
society for an extended period of time based not only on that person=s most recent
offenses, but on the propensities demonstrated over a period of time during
which he has been convicted of and sentenced for other crimes.  Tex.
Pen. Code Ann. ' 12.42 (Vernon Supp. 2004); Rummel,
445 U.S. at  284; Hicks, 15 S.W.3d
at 632.  A[T]he point at
which a recidivist will be deemed to have demonstrated the necessary
propensities and the amount of time that the recidivist will be isolated from
society are matters largely within the discretion of the punishing
jurisdiction.@  Rummel,
445 U.S. at 285.  

We must first objectively determine whether appellant=s crimesCtwo counts of aggravated sexual
assault of a nine-year-old child and two counts of indecency with a child by
sexual contactCwarrant the punishment assessed.  McGruder, 954 F.2d at 316.  In making this initial comparison, we may
consider the harm caused or threatened to the victim or society, and the
culpability of the offender.  Solem,
363 U.S. at 292.  Additionally, we may
consider the magnitude of the crime; for example, aggravated sexual assault of
a child under fourteen years of age versus sexual assault.  Id. at 293; see Tex. Pen. Code Ann. '' 22.011, 22.021.  

The legislature has determined that
aggravated sexual assault of a child is a first degree felony, punishable by
imprisonment in the institutional division for life or for any term of not more
than 99 years or less than 5 years and a fine of up to $10,000.  See Tex.
Pen. Code Ann. '' 12.32(a), 22.021(e) (Vernon 2003 &
Supp. 2004).  Additionally, the
legislature=s recidivist statute mandates imprisonment
for life if that person has been previously convicted of indecency with a
child, sexual assault, or aggravated sexual assault.  Tex.
Pen. Code Ann. ' 12.42(c)(2).  Thus, the legislature=s harsh
punishments imposed on a person convicted of aggravated sexual assault,
especially where that person has previously been convicted of a similar crime,
demonstrate the seriousness of the crime. 
Indeed, only punishment for a capital felony may require a more severe
sentence.  See Tex. Pen. Code Ann. '12.31 (Vernon
2003).








Additionally, the legislature has
determined that indecency with a child by sexual contact is a second degree
felony.  Tex. Pen. Code Ann. '' 21.11(a)(1), (d)
(Vernon 2003); cf. Tex. Penal
Code Ann. 22.11(a)(2), (d) (providing indecency with a child by exposure
is a third degree felony).  A second
degree felony is punishable by imprisonment in the institutional division for
any term of not more than 20 years or less than 2 years and a fine of up to
$10,000.  Tex. Pen. Code Ann. ' 12.33 (Vernon
2003).  However, if an individual is
convicted of a second degree felony and has been once before convicted of a
felony, that person shall be punished for a first degree felony. Tex. Pen. Code Ann. ' 12.42(b).  

As demonstrated by the legislature=s harsh treatment
of first time and repeat offenders, appellant=s crimes are
extremely severe.   Appellant concedes his punishments
were assessed within the limits prescribed by statute; however, appellant
argues that his combined 398 year sentence constitutes cruel and unusual
punishment because the gravity of the offenses are grossly disproportionate to
the severity of the punishment. 
Appellant contends the Aimposition of consecutive sentencing by the court result[ed]
in Appellant having no hope of ever being eligible for parole in his natural
lifetime because he is a 48-year old man. 
If the court ran the sentences concurrently Appellant may have a glimmer
of hope of being released back to society in his senior years.  The sentences were far too severe in
comparison to the gravity of the alleged offenses.@ 
In support of his argument, appellant contends that because K.M. has not
shown visible signs of mental or physical trauma, his sentences are too
severe.  Appellant=s argument, however, incorrectly
frames the issue; the gravity of the offense is not measured solely by the harm
caused the victim.  Solem, 363
U.S. at 292B93. 
Appellant=s argument must fail because he examines his conduct and his
sentences in a vacuum, overlooking his past and recent conduct; however, our
review is not so limited.  See Hicks,
15 S.W.3d at 632 (holding that we look at the person=s more recent offense as well as the
propensities he has demonstrated by his prior conduct).  








Appellant=s sentences were imposed to reflect the seriousness of his
most recent offenses, not as they stand alone, but in light of his prior
offenses.  See McGruder, 954 F.2d
at 316.  Appellant was not convicted of a
single nonviolent, minor offense; rather, appellant was convicted of two counts
of aggravated sexual assault of a child, a first degree felony, and two counts of
indecency with a child, a second degree felony. 
The harm threatened to K.M. and to society is great because appellant=s victims are
young, innocent, and helpless girls.  

Additionally, K.M. was not appellant=s first
victim.  During the punishment phase of
trial, appellant=s daughter testified to events that
ultimately led to appellant=s court-martial
and dishonorable discharge from the military. 
The charges in the court-martial were attempted carnal knowledge, sodomy
with a child under the age of sixteen, two counts of an indecent act upon the
body of a female under sixteen years of age, and indecent liberties upon the
body of a female under the age of sixteen.[4]  Further, as part of the investigation
surrounding his court-martial, over two dozen explicit pornographic movies were
discovered in appellant=s house.[5]  Appellant confessed to some, if not all, of
the charges alleged in the court-martial. 
After his court-martial proceedings were completed, appellant was
sentenced to nine years at Fort Leavenworth, and after serving four years, he
was released in 1994.  Appellant=s release from
Fort Leavenworth was conditioned on him not having any contact with his
daughter, and not having any contact with minor females without the approval of
his probation officer.  








During the guilt/innocence phase of trial,
K.M. testified to multiple acts committed by appellant, including oral and
vaginal sex, digital penetration, touching of her breasts with his hands, and
touching of her genitals with his hands and penis.  Additionally, when the police conducted a
search of appellant=s residence, approximately 786 pieces of
pornography were recovered, a majority of which consisted of child
pornography.  Appellant possessed videos
and pictures, including several close-up pictures of a female child=s genitalia and
videos depicting children engaging in sexual acts with adults.  When the officers first discovered the
pornographic material on appellant=s computer, he
responded that he downloaded an image several years ago and had forgotten he
still had it.  Officers also found a
document entitled APedophile@ that discussed an
individual accused of molesting and impregnating his daughters.  In this document, the accused discussed how
to avoid prosecution, which included his tactic of claiming the children were
coming on to him sexually.  In appellant=s statement to
police, he not only indicated his preference for thirteen and fourteen-year-old
girls, but he claimed K.M. was coming on to him sexually.

Appellant=s fiancee
testified during the punishment phase of trial. 
She stated that she met appellant in January 2002, approximately six
months after K.M.=s first outcry statement.  She has three daughters, ages fourteen, sixteen,
and seventeen, and although she knew of the charges appellant faced, she did
not believe he was guilty.  She knew
limited details about appellant=s previous
court-martial and, trusting appellant, believed the military made a
mistake.  However, she could not recall
appellant mentioning that he confessed to those crimes. 








Appellant has multiple prior convictions
based on similar conduct while he was serving in the military.[6]  Based on the severity of the crimes and
appellant=s criminal history, we hold appellant=s sentences for
aggravated sexual assault and indecency with a child, even though consecutive,
do not violate the Eighth Amendment=s prohibition
against cruel and unusual punishment.  Rummel,
445 U.S. at 265-66, 276 (holding sentence of life imprisonment under Texas
recidivist statute for felony offense of obtaining $120.75 by false pretenses
did not violate Eighth Amendment, where appellant was previously convicted of
passing a forged check in the amount of $28.36 and fraudulently using a credit
card to obtain $80 worth of goods or services); United States v. Yousef,
327 F.3d 56, 163 (recognizing
that appellant=s sentence, even if well beyond his
life expectancy, was not grossly disproportionate to his crimes); United States v.
Arrington, 159 F.3d 1069, 1073 (7th Cir. 1998) (recognizing that while total sentence was harsh as
compared to other similarly situated defendants, the consecutive sentencing was
not grossly disproportionate given the defendant=s repeated use of guns to commit
serious crimes); United States v. Saccoccia, 58 F.3d 754, 762, 789 (1st
Cir. 1995) (upholding 660 year sentence for racketeering, money laundering, and
other related offenses); United States v. Parker, 877 F.2d 327, 333B34 (5th Cir. 1989)
(upholding defendant=s punishment of two consecutive life
sentences for conspiracy and kidnaping); Smallwood v. State, 827 S.W.2d
34, 38 (Tex. App.CHouston [1st Dist.] 1992, pet. ref=d) (holding that
based on defendant=s nine prior felony convictions, his
fifty-year sentence for shoplifting less than $30 of meat was not cruel and
unusual under the Eighth Amendment). 
Comparing the gravity of the offenses to the severity of his sentence,
we cannot say appellant=s punishment is grossly disproportionate
to his offenses in violation of the Eighth Amendment of the United States
Constitution.  Accordingly, we overrule
appellant=s second point of error.  

IV.      Double
Jeopardy








In his third point of error, appellant
contends his multiple convictions and the enhancement provision of the Texas
Penal Code violate the double jeopardy clause of the Federal and State
Constitutions.  Specifically, appellant
argues (1) his convictions violate the federal and state constitutional
guarantee against multiple punishments for the same offense,  and (2) Texas Penal Code section
12.42(c)(2)(B)(v), which provides for an automatic life sentence for repeat
sexual offenders, violates the state and federal constitutional guarantee
against multiple punishments for the same offense.  Specifically, appellant contends the Fifth and
Fourteenth Amendments of the Federal Constitution, and Article I, Section 14 of
the Texas Constitution were violated. 
Appellant, however, does not argue that the Texas double jeopardy clause
differs from the Fifth Amendment of the United States Constitution.  Because appellant has not provided separate
argument or analysis on his constitutional claims, we will consider the double
jeopardy point of error only under the federal constitution.  See Lape v. State, 893 S.W.2d 949, 954
(Tex. App.CHouston [14th Dist.] 1994, pet. ref=d); Hutchins v.
State, 992 S.W.2d 629, 630 (Tex. App.CAustin 1999, pet.
ref=d, untimely
filed).  Additionally, appellant failed
to present any argument or authority regarding Texas Penal Code section
12.42(c)(2)(B)(v); thus, appellant has also waived this issue on appeal.  Tex.
R. App. P. 38.1(h).  Accordingly,
the only remaining subsidiary issue in appellant=s third point of
error is whether his multiple convictions violate the federal constitution=s double jeopardy
protections.  








The double jeopardy clause of the United
States Constitution protects against multiple punishments for the same offense
as well as multiple prosecutions for the same offense after a conviction or an
acquittal.  State v. Perez, 947
S.W.2d 268, 270 (Tex. Crim. App. 1997). 
The threshold question in either case is whether the defendant is being
punished or prosecuted for the Asame offense.@  Id. 
An offense is included within another if Ait is established
by proof of the same or less than all the facts required to establish the
commission of the offense charged.@  Tex.
Code Crim. Proc. Ann. art. 37.09(1) (Vernon 1981).  Where the indictment alleges separate and
distinct acts of aggravated sexual assault and indecency with a child that are
proven by different conduct, the offenses are separate and distinct for double
jeopardy purposes.  Vick v. State,
991 S.W.2d 830, 833 (Tex. Crim. App. 1999). 
Likewise, when the same act violates two different penal statutes, the
two offenses are the same for double jeopardy purposes if one of the offenses
contains all the elements of the other.  Blockburger
v. United States, 284 U.S. 299, 304 (1932); DeMoss v. State, 12
S.W.3d 553, 559 (Tex. App.CSan Antonio 1999,
pet. ref=d).  Thus, greater inclusive and lesser included
offenses are the same for jeopardy purposes. 
Parrish v. State, 869 S.W.2d 352, 354 (Tex. Crim. App.
1994).  Our focus is on Awhether the
evidence justified the trial court in submitting instructions that would permit
the jury to convict and sentence appellant both for committing aggravated
sexual assault and for committing indecency with a child.@  Ochoa v. State, 982 S.W.2d 904, 907
(Tex. Crim. App. 1998).       

Generally, to preserve a double jeopardy
claim, a defendant must object at or before the time when the charge is
submitted to the jury.  Gonzalez v.
State, 8 S.W.3d 640, 642 (Tex. Crim. App. 2000).  A defendant, however, is excused from the
preservation requirement A[1] when the undisputed facts show the
double jeopardy violation is clearly apparent on the face of the record and [2]
when enforcement of usual rules of procedural default serves no legitimate
state interests.@  Id.
at 643.  Here, appellant failed to object
at or before the time when the charge was submitted to the jury, and he raised
his double jeopardy complaint for the first time in his motion for new
trial.  Therefore, appellant must meet
both prongs before we may consider this issue on appeal.  Id.; Murray v. State, 24 S.W.3d
881, 888B89 (Tex. App.CWaco 2000, pet.
ref=d).   

We first address whether it is apparent
from the record that appellant=s multiple
convictions for aggravated sexual assault and indecency with a child constitute
a double jeopardy violation.  The first
indictment alleges appellant committed the offense on or about June 11, 2001,
and the second, third, and fourth indictments allege appellant committed the
offenses on or about July 7, 2000. When the indictment uses the Aon or about@ language, the jury
may convict the defendant if it finds he committed the acts at some time prior
to the presentment of the indictment, but within the limitations period.  See Sledge v. State, 953 S.W.2d 253,
256 (Tex. Crim. App. 1997); Mireles v. State, 901 S.W.2d 458, 459B61 (Tex. Crim.
App. 1995).  








Appellant=s first
indictment, alleging aggravated sexual assault, is based on the incident in the
garage in June 2001, when appellant licked K.M.=s genitals.  The second indictment, also alleging
aggravated sexual assault, could be based on K.M.=s testimony that
while living at appellant=s house, appellant=s sexual organ
penetrated her sexual organ (1) while she was taking a shower, (2) on another
occasion when she was in the bathroom, or (3) when she was watching television
after everyone except her and appellant had gone to bed.  The fourth indictment, alleging indecency
with a child, is supported by K.M.=s testimony that
one night appellant squeezed her breasts before having sex with her. 

Appellant argues the third indictment,
touching of K.M.=s genitals, could be a lesser-included
offense of the second indictment, which alleged appellant=s sexual organ
penetrated K.M.=s sexual organ.  Appellant=s argument,
however, would be valid only (1) if the evidence showed that the only act of
sexual contact committed by appellant on or about July 7, 2000, was the contact
incident to appellant=s penetration of K.M. with his penis, or
(2) if the charge required the jury to find appellant touched K.M. with this
penis. See Hutchins, 992 S.W.2d at 633. 
K.M.=s testimony, however, showed that on one
occasion, appellant placed his penis on the outside of her panties and started
masturbating, and on another occasion, appellant put his finger inside of
her.  Either act would be sufficient to
support the third indictment, and both are separate and distinct acts from
penetration of her female sexual organ by appellant=s penis.  Accordingly, because appellant has not shown
that his conviction for indecency with a child is based on the same conduct
underlying his convictions for aggravated sexual assault of a child, he is
unable to prove a double jeopardy violation is apparent on the face of the
record.

          Because the alleged double jeopardy
violation is not apparent on the face of the record, we hold appellant has
failed to meet his burden.  Gonzalez,
8 S.W.3d at 643, 645.  However, even if
appellant did not waive his double jeopardy complaint, we hold there was not a
double jeopardy violation in this case.  Here, appellant was charged and convicted of
two violations of Texas Penal Code section 21.11 and two violations of Texas
Penal Code section 22.021.  Because each
violation is based on different conduct, each is a separate and distinct
offense for double jeopardy purposes.  Ochoa,
982 S.W.2d at 908.  Thus, the double
jeopardy clause was not violated when appellant was convicted of these four
separate offenses.  See id.  Accordingly, we overrule appellant=s third point of
error.  

 

 








V.      Admission
of Evidence

Appellant alleges in his fifth point of
error the trial court admitted irrelevant and prejudicial evidence in violation
of the Fifth and Fourteenth Amendments to the United States Constitution,
Article I, Sections 13 and 19 of the Texas Constitution, and article 1.04 of
the Texas Code of Criminal Procedure. 
Appellant, however, does not cite any authority or provide any analysis
supporting his constitutional challenges or alleged violation of the code of
criminal procedure.  Accordingly, we hold
appellant has waived error, if any, as to whether the trial court=s actions violated
his rights under the United States Constitution, the Texas Constitution, and
the Texas Code of Criminal Procedure.  Tex. R. App. P. 38.1(h); Rhoades,
934 S.W.2d at 119.

However, pursuant to Texas Rule of
Appellate Procedure 38.1(e), we will address any subsidiary issue that is
fairly included in the stated point of error. 
Tex. R. App. P. 38.1(e).  While appellant=s constitutional
and code of criminal procedure challenges are waived, he nevertheless contends
the trial court abused its discretion in admitting (1) evidence of child
pornography seized from appellant=s residence, (2) a
statement given by appellant to police that he was interested in thirteen and
fourteen-year-old girls, and (3) evidence that he was dishonorably discharged
from the military.  Appellant argues each
was an extraneous offense and should have been excluded under Texas Rules of
Evidence 404(b) and 403.  We will review
each contention to determine whether the trial court abused its discretion in
admitting the challenged evidence.    

A.      Pornographic Images








Appellant first challenges the admission
of 786 pieces of pornography during the guilt/innocence phase of trial.  Detective Stevens, one of the arresting
officers, testified on behalf of the State that after conducting a search of
appellant=s residence, 786 pieces of pornography
were found, a majority of which was child pornography.  The State then offered the pornographic
images into evidence.  Appellant objected
to admission of the images, citing the court to objections raised in his previously
filed motions to suppress.  Without
deciding whether referring to another previously filed document was sufficient
to preserve error, appellant=s motions to
suppress do not raise the same contentions now alleged on appeal.  The motions sought to suppress the images
based on an illegal arrest, and subsequently an illegal search; however,
appellant contends on appeal the images should have been excluded under Texas
Rules of Evidence 404(b) and 403. 
Because he raises different arguments on appeal, we hold appellant has
waived error, if any, regarding admission of the 786 pieces of
pornography.  Rezac v. State, 782
S.W.2d 869, 870 (Tex. Crim. App. 1990) (AAn objection
stating one legal basis may not be used to support a different legal theory on
appeal.@).   

B.      Statement to Police

Appellant also contends the trial court
abused its discretion in admitting his statement to police that he was interested
in thirteen and fourteen-year-old girls. 
A few days after K.M. made her first outcry statement, Detective Stevens
questioned appellant regarding the charges. 
Appellant agreed to give a statement,[7]  during which time Detective Stevens asked
appellant AWhat age are you interested in? What age
excites you? What age turns you on?@  Appellant responded, AThirteen (13),
fourteen (14) years old.  It=s something I=ve dealt with and,
as far as I=m concerned, I have good control
over.  I don=t crave over the
kids.  I don=t have fantasies.@  During trial, appellant objected to the
admission of the statement because it was Atoo prejudicial@ and also should
be excluded as an extraneous offense under Texas Rule of Evidence 404(b).  Appellant properly preserved this point of
error for review.  Tex. R. App. P. 33.1(a).   








We first address whether the statement was
inadmissible under Rule 404(b).  Rule
404(b) provides: AEvidence of other crimes, wrongs or acts
is not admissible to prove the character of a person in order to show action in
conformity therewith.@  Tex. R. Evid. 404(b).  To constitute an extraneous offense, the
evidence must show a crime or bad act and the defendant=s connection to
it.  Moreno v. State, 858 S.W.2d
453, 463 (Tex. Crim. App. 1993).  AThis necessarily
includes some sort of extraneous conduct on behalf of the defendant which forms
part of the alleged extraneous offense.@  Id. 
Because actual conduct is required, appellant=s thoughts,
interests, or fantasies, are not excludable under Rule 404(b).  See Massey v. State, 933 S.W.2d 141,
153B54 (Tex. Crim.
App. 1996) (holding testimony pertaining to thoughts, not conduct, did not
implicate Rule 404(b)); Moreno, 858 S.W.2d at 463 (holding inchoate
thoughts are not excludable under Rule 404(b)). 
Here, appellant=s statement to police that he was
interested in thirteen and fourteen-year-old girls is not conduct that is
excludable under Rule 404(b); rather, his statement merely constitutes his
thoughts and preferences.  Therefore, we
hold the trial court did not abuse its discretion in allowing appellant=s statement over his
Rule 404(b) objection.

We next determine whether the trial court
abused its discretion by not excluding the statement under Texas Rule of
Evidence 403.  Under Rule 403, evidence
may be excluded, even though relevant, if its probative value is substantially
outweighed by the danger of unfair prejudice. 
Tex. R. Evid. 403.  We begin by recognizing that ARule 403 >favors admission
of relevant evidence and implies a presumption that relevant evidence will be
more probative than prejudicial.=@  Massey, 933 S.W.2d at 154 (quoting Brimage
v. State, 918 S.W.2d 466, 505 (Tex. Crim. App. 1994)).  Additional relevant criteria for reviewing
the trial court=s action include, whether the State had
other evidence to establish the ultimate issue, and whether that evidence was
particularly compelling.  Moreno,
858 S.W.2d at 464. 








          Appellant=s statement that
he was interested in, excited by, and turned on by thirteen and
fourteen-year-old girls was highly probative of his motive, intent, and state
of mind.  In looking at the relevant
criteria, appellant=s admission was the only evidence of his
intent and state of mind, and, standing by itself, the evidence was very
compelling.  Appellant argues the
statement was not probative because K.M. was nine years old at the time of the
offense, not thirteen or fourteen. 
Appellant=s distinction, however, does not decrease
the probative value of his statement, and while the prejudicial effect of the
statement is great, the prejudicial effect does not substantially outweigh the
probative value.  Accordingly, we hold
the trial court did not abuse its discretion in admitting appellant=s statement into
evidence.

C.      Dishonorable Discharge

Finally, appellant challenges the trial
court=s admission of
appellant=s dishonorable discharge from the military
during the guilt/innocence phase of trial. 
Appellant again argues the testimony was inadmissible under Texas Rules
of Evidence 403 and 404(b).  During
trial, the judge prohibited the State from mentioning appellant=s court-martial,
but ruled that the State could extract testimony that appellant was
dishonorably discharged from the military. 
Appellant objected, claiming the dishonorable discharge should also be
excluded because it was Ahighly prejudicial@ and Abrings up the
possibility of the specter of an extraneous offense or bad act.@  The trial court overruled appellant=s objections, and
allowed the State to ask appellant=s mother whether
he was dishonorably discharged from the military after sixteen years of
service. 








However, even assuming, without deciding,
the trial court abused its discretion in admitting evidence of appellant=s dishonorable
discharge, we hold the error, if any, is harmless.  Texas Rule of Appellate Procedure 44.2(b)
provides any error, other than constitutional error, that does not affect
substantial rights must be disregarded.  Tex. R. App. P. 44.2(b).  The erroneous admission of an extraneous
offense or bad act does not constitute constitutional error; therefore, we must
disregard the alleged error if appellant=s substantial
rights are unaffected.  Peters v.
State, 93 S.W.3d 347, 354 (Tex. App.CHouston [14th
Dist.] 2002, pet. ref=d). 
Substantial rights are not affected Aif the appellate
court, after examining the record as a whole, has fair assurance that the error
did not influence the jury, or had but a slight effect.@  Johnson v. State, 967 S.W.2d 410, 417
(Tex. Crim. App. 1998).  Thus, we must
determine whether the error had a substantial or injurious effect on the jury=s verdict.  Morales v. State, 32 S.W.3d 862, 867
(Tex. Crim. App. 2000).  In assessing the
likelihood that the jury=s decision was adversely affected by the
error, we consider everything in the record, including any testimony or
physical evidence admitted for the jury=s consideration,
the nature of the evidence supporting the verdict, the character of the alleged
error, and how it might be considered in connection with other evidence in the
case.  Id.  We may also consider the jury instruction
given by the trial judge, the State=s theory and any
defensive theories, closing arguments, and even voir dire, if material to
appellant=s claim. 
Id. 

After examining the entire record, we hold the admission of
appellant=s dishonorable discharge, if error, was
harmless.  During the entire lengthy
trial, the State only elicited the fact that appellant was dishonorably
discharged from the military one time, during appellant=s mother=s
cross-examination.  The testimony
elicited at trial from appellant=s mother relating to
the dishonorable discharge is repeated here verbatim:

Q:      What
branch of the military was he in?

A:      Air
Force.

Q:      How
long was he in the Air Force?

A:      Sixteen
years.

Q:      And he
was dishonorably discharged; is that correct?

A:      Yes.

The State did not inquire into the
underlying facts resulting in the dishonorable discharge and did not emphasize
or even repeat the fact that appellant was dishonorably discharged during any
other part of the trial.  Additionally,
there was substantial evidence supporting the jury=s verdict apart
from appellant=s dishonorable discharge.  Given the record before us, we conclude the
error, if any, in the admission of testimony concerning appellant=s dishonorable
discharge did not influence the jury, or had only a slight effect.  Accordingly, we overrule appellant=s fifth point of
error.     

VI.      Prosecutorial
Misconduct








In his sixth point of error, appellant
argues the prosecutor=s inappropriate actions during the
guilt/innocence phase of trial amounted to prosecutorial misconduct in violation
of his rights under the Fourteenth Amendment of the United States Constitution,
Article I, Sections 13 and 19 of the Texas Constitution, and article 1.04 of
the Texas Code of Criminal Procedure. 
Appellant, however, has waived this complaint by failing to properly
brief it.  Texas Rule of Appellate
Procedure 38.1(h) provides that A[t]he brief must
contain a clear and concise argument for the contentions made, with appropriate
citations to authorities and to the record.@  Tex.
R. App. P. 38.1(h).  Here,
appellant cited only one case to support his position that the prosecutor=s actions were
improper; however, that case is inapposite because the sole issue decided in
that case concerned the effect of the double jeopardy clause after
prosecutorial misconduct is so severe that the defendant is forced to request a
mistrial.  See Bauder v. State,
921 S.W.2d 696, 698 (Tex. Crim. App. 1996). 
Appellant has failed to cite specific legal authority for why the
prosecutor=s actions were improper.  Rhoades, 934 S.W.2d at 119.  Appellant did not address any of the
governing legal principles, nor did he apply any such principles to the facts
of this case.  King, 17 S.W.3d at
23.  Conclusory arguments that cite no
authority present nothing for appellate review. 
Id.; Nolan v. State, 102 S.W.3d 231, 236 (Tex. App.CHouston [14th
Dist.] 2003, pet. ref=d). 
Accordingly, we hold appellant has waived error as to whether the
prosecutor=s actions were improper.  Tex.
R. App. P. 38.1(h).  We overrule
appellant=s sixth point of error. 

VII.     Motion
for Continuance

In his seventh point of error, appellant
contends the trial court erroneously denied his motion for continuance in
violation of the Sixth and Fourteenth Amendments of the United States
Constitution and in violation of Article I, Sections 10 and 19 of the Texas
Constitution.  The State contends
appellant has failed to preserve this point of error for review because the
record does not reflect appellant pursued the motion before the trial court or
that the trial court was presented with, reviewed, or ruled on the motion.  We agree. 









To preserve a complaint for appellate
review, the record must show the trial court ruled on the motion, either
expressly or implicitly.  Tex. R. App. P. 33.1(a)(2)(A).  Here, because the record does not reflect
appellant ever presented the motion for continuance to the trial court, or that
the trial court ever ruled on the motion, appellant has not preserved this point
of error for review.  Id.; Gomez
v. State, 346 S.W.2d 847, 848 (Tex. Crim. App. 1961); Salazar v. State,
95 S.W.3d 501, 505 (Tex. App.CHouston [1st
Dist.] 2002, pet. ref=d); 
Smith v. State, 36 S.W.3d 908, 910 (Tex. App.CHouston [1st
Dist.] 2001, pet. ref=d). 
Accordingly, we overrule appellant=s seventh point of
error.

VIII.    Exclusion
of Evidence during Motion for New Trial Hearing 

In his eighth and final point of error,
appellant argues his due process rights under the Fourteenth Amendment of the
United States Constitution and Article I, Section 19 of the Texas Constitution
were violated by the trial court=s exclusion of
evidence during the hearing on his motion for new trial.  Appellant, however, has failed to provide any
argument or cite any authority relating to either constitutional issue; therefore,
any alleged constitutional violation is waived. 
Tex. R. App. P. 38.1(h); Rhoades, 934 S.W.2d at 119; King, 17 S.W.3d at
23.  Because we must consider any subsidiary
issue fairly included under this point of error, we will address appellant=s remaining
subsidiary issue and decide whether the trial court erred in excluding evidence
during the hearing on appellant=s motion for new
trial.  Tex.
R. App. P. 38.1(e). 

During the hearing on appellant=s motion for new
trial, appellant offered the testimony of Tammy Urban, a forensic interviewer
at the Children=s Assessment Center.  Urban interviewed K.M. both times that K.M.
provided a statement to the Children=s Assessment
Center.  During Urban=s testimony,
appellant sought to admit the video of K.M.=s first interview
and requested permission to play the video for the court.  Appellant argues the videotape was extremely
relevant to show the legal and factual insufficiency of the evidence to support
the verdict.  The trial court denied
appellant=s request, excluding the first video from
evidence.  Appellant then offered the
video of K.M.=s second interview into evidence, but the
trial court again denied admission of the videotape.  








On appeal, appellant contends the trial
court erroneously excluded the two videotapes because the tapes Awere essential to
the administration of justice under Texas Rules [sic] of Evidence 402 because
of the factual and legal inconsistencies present in those statements and the
long time delay between the first and second statement.@  Appellant argues that presenting the tapes in
the motion for new trial hearing would have allowed the appellate court to
discern the inconsistencies, demeanor of the complainant, and the overall
credibility of the complainant=s testimony.  

Whether to admit or exclude evidence is
within the sole discretion of the trial court; thus, when reviewing a trial
court=s decision
regarding the admission or exclusion of evidence, we must determine whether the
trial court abused it discretion.  Torres
v. State, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002).  In order to obtain a new trial based on newly
discovered evidence, appellant was required to show (1) the newly discovered
evidence was unknown to the appellant at the time of trial; (2) the appellant=s failure to discover
the evidence was not due to his own lack of diligence; (3) the materiality of
the evidence is such as would probably bring about a different result in
another trial; and (4) the evidence is admissible and not merely cumulative,
corroborative, collateral, or impeaching. 
Margraves v. State, 56 S.W.3d 673, 685 (Tex. App.CHouston [14th
Dist.] 2001, no pet.).  Here, appellant
is attempting to circumvent the newly discovered evidence rule by offering
evidence under the guise of a legal or factual sufficiency challenge.  Appellant=s only
justification for admitting the evidence is that it would show inconsistencies
in the child victim=s statement at trial; however, new
evidence offered for impeachment value only is not admissible.  See id.  Further, appellant admitted in the hearing on
the motion for new trial that he had access to and viewed the videotapes prior
to trial.   The appropriate time to admit
the videotapes to impeach the victim=s testimony would
have been during trial, not during the motion for new trial.  Evidence known at the time of trial has no
unique features that entitle the proponent to a new trial.  Accordingly, we hold the trial court did not
abuse its discretion in excluding the videotapes during the motion for new
trial.  We overrule appellant=s eighth point of
error.

 

 

 

 








CONCLUSION

Having overruled appellant=s eight points of error, we affirm the judgment of the
trial court.

 

 

/s/      John S. Anderson

Justice

 

 

Judgment
rendered and Memorandum Opinion filed October 7, 2004.

Panel
consists of Justices Yates, Anderson, and Hudson.

Do
Not Publish C Tex.
R. App. P. 47.2(b).











[1]  The Eighth
Amendment of the United States Constitution, Article I, Section 13 of the Texas
Constitution, and article 1.09 of the Texas Code of Criminal Procedure, provide
that excessive bail shall not be required, nor excessive fines imposed, nor
cruel or unusual punishment inflicted.  U.S. Const. amend. VIII; Tex. Const. art. I, ' 13; Tex. Code
Crim. Proc. Ann. art. 1.09 (Vernon 1977).





[2]  Appellant=s aggravated sexual assault charges were enhanced by
Texas Penal Code section 12.42(c)(2), which provides that a defendant convicted
of aggravated sexual assault who has previously been convicted under the laws
of another state containing elements that are substantially similar to the
elements of a specifically enumerated offenseC
including indecency with a child, sexual assault, and aggravated sexual assaultCshall be punished by life imprisonment.  Tex.
Pen. Code Ann. ' 12.42(c)(2) (Vernon Supp. 2004).     





[3]  In addressing
the legislative deference, the United States Supreme Court stated in Rummel
that Aone could argue without fear of contradiction by any
decision of this Court that for crimes concededly classified and classifiable
as felonies, that is, as punishable by significant terms of imprisonment in a
state penitentiary, the length of the sentence actually imposed is purely a
matter of legislative prerogative.@  Rummel, 445 U.S. at 274.  





[4]  Colonel Edmond
Bloom testified during the punishment phase of trial.  Colonel Bloom was a Deputy Staff Judge
Advocate at the Hahn Air Force base in Germany where appellant was stationed
when he committed the crimes against his daughter. He explained the military
charges against appellant in lay terms 
as: (1) carnal knowledge is consensual sex with a child under the age of
sixteen; (2) sodomy is oral or anal sex; (3) indecent acts involve
inappropriate touching with sexual gratification of the actor; and (4) indecent
liberties is similar to indecent acts, except it does not require
touching.  





[5]  The record
does not state whether any of the pornographic materials recovered depicted
child pornography; however, during the course of the court-martial
investigation, appellant=s daughter identified a specific pornographic movie
that was recovered from appellant=s
home.  This reference and discovery of
the specific movie formed the basis of appellant=s
conviction of indecent liberties.  





[6]  Texas Penal
Code section 12.42(c)(2)(B)(v) provides that punishment may be enhanced if the
defendant has been previously convicted Aunder
the laws of another state containing elements that are substantially similar to
the elements of an offense listed [in that subsection].@  Tex. Pen. Code Ann. ' 12.42(c)(2)(B)(v). Here, the trial court found that
at least one of the offenses listed in appellant=s court-
martial contained substantially similar elements to an offense that serves as a
basis for enhancement.  Appellant,
however, does not challenge the trial court=s
finding; accordingly, we do not decide today whether his punishments were
properly enhanced based on the similarity of his military conviction to an
offense listed in Penal Code section 12.42(c)(2)(B)(v).   





[7]  Appellant=s statement was videotaped by Detective Stevens with
appellant=s permission.  A
transcribed version of the video, with redactions, was admitted into
evidence.  Appellant does not challenge
the procedures employed by Detective Stevens in the collection of his
statement.