

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

**NO. 2-07-183-CR**

FRANCISCO DEGADILLO                                                    APPELLANT
A/K/A FRANCISCO DELGADILLO

V.

THE STATE OF TEXAS                                                          STATE

------------

FROM THE 372ND DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. Introduction

In two issues, Appellant Francisco Degadillo a/k/a Francisco Delgadillo appeals his conviction for burglary of a habitation.[2]  We affirm.

---

[1] *See* TEX. R. APP. P. 47.4.

[2] *See* TEX. PENAL CODE ANN. § 30.02(a) (Vernon 2003).

## II. Factual and Procedural History

Degadillo and Filiberto Gorostieta shared a house in Fort Worth for several months in 2005. About 1:00 a.m. on December 2, 2005, two weeks after Degadillo had moved out of the house, two men broke into the house. Filiberto identified one of the men as Degadillo. According to Filiberto, Degadillo had a baseball bat. The two men told Filiberto that they would kill him if he did not give them money. Filiberto gave the men his wallet, and they left.

A jury found Degadillo guilty of burglary of a habitation, and the trial court sentenced him to prison for ten years and one day. This appeal followed.

## III. Jury Selection

In his first issue, Degadillo claims that the trial court erred because after the jury panel was dismissed and the jurors were sworn in, the court substituted a juror who had previously been dismissed for a disqualified juror. Degadillo concedes that he requested and complied with this procedure, but he suggests that the procedure was "fundamental, jurisdictional error that could not be waived, even with [the] consent of [Degadillo]." The State alternatively argues that Degadillo is estopped from complaining about the trial court's actions by the "invited error" doctrine, that Degadillo did not preserve error, or that any error was harmless.

**A. Standard of Review**

The doctrine of "invited error," as distinguished from a waiver of error, is a type of estoppel. *Prystash v. State*, 3 S.W.3d 522, 531 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1102 (2000). This doctrine estops a party from making an appellate error of an action that it induced. *Id.* As the Texas Court of Criminal Appeals has explained,

> Waiver might usefully be distinguished from what is sometimes called 'invited error.' If a party affirmatively seeks action by the trial court, that party cannot later contend that the action was error. This is not really a waiver of error previously committed. Rather, it is part of the definition of what can constitute error, and quite reasonably defines error of which a party may complain as excluding those actions of the trial court actually sought by the party in that tribunal.

*Id.* In *Prystash*, the court applied the doctrine to a jury charge error at the punishment stage of a capital murder case. *Id.* at 529–32.

In another decision, the Texas Court of Criminal Appeals applied the doctrine to a case with some similarities to the case before us today. *Jones v. State*, 119 S.W.3d 766, 784 (Tex. Crim. App. 2003), *cert. denied*, 542 U.S. 905 (2004). There, the appellant argued that the trial court's discharge of a juror was inappropriate under the Texas Code of Criminal Procedure. *Id.* The court noted that even though the appellant had argued to the trial court that discharge would be inappropriate, he nevertheless proposed discharge as an

3

alternative to mistrial at least three times. *Id.* Thus, the court concluded that because the appellant had requested the discharge as an alternative to mistrial, he was estopped from complaining about it on appeal. *Id.*

Finally, in another case, the Texas Court of Criminal Appeals applied the doctrine to an error that the appellant claimed was fundamental. *Druery v. State*, 225 S.W.3d 491, 505–06 (Tex. Crim. App.), *cert. denied*, 128 S. Ct. 627 (2007). There, the appellant, who was convicted of capital murder, complained that the trial court should have instructed the jury on the lesser included offense of first-degree murder and that the failure to include such an instruction was "fundamental error." *Id.* at 505. The court first observed the general rule that if there was no proper objection to an alleged jury charge error, then the appellant must claim that the alleged error was fundamental, and he can obtain a reversal only if there was "egregious harm." *Id.* The court then noted, however, the doctrine of invited error. *Id.* at 505–06. Thus, because the appellant, through his attorney, had "affirmatively requested" that the instruction on the lesser included offense not be given, he was estopped on appeal from claiming that it was error. *Id.* at 506. Therefore, the court did not address whether the failure to give the instruction on the lesser included offense was error or had "egregious[ly] harm[ed]" the appellant. *Id.*

4

The doctrine of invited error has been previously applied by this court.[3] In one case, we applied it to an illegal sentence for which the defendant had entered into a plea bargain with the State. *Ex parte Shoe*, 137 S.W.3d 100, 101–03 (Tex. App.—Fort Worth 2004), *pet. dism'd*, 235 S.W.3d 782 (Tex. Crim. App. 2007). Because the defendant had requested the sentence and accepted the benefit of not having a fine assessed against him, we held that he was "estopped from challenging the illegal sentence because he accepted the benefits of it." *Id.* at 102–03.

---

[3] Other courts of appeals have applied the doctrine to a variety of situations in the last few years. *See, e.g., Schultz v. State*, No. 04-07-00035-CR, 2008 WL 182877, at *2 (Tex. App.—San Antonio Jan. 23, 2008, no pet.) (applying the doctrine to a defendant's agreement to a ten-year felony sentence in exchange for the State's agreement not to refile two misdemeanor cases as felonies); *Morales v. State*, 222 S.W.3d 134, 143–44 (Tex. App.—Corpus Christi 2006, no pet.) (applying the doctrine to a defendant's failure to request that a child witness be interviewed via closed-circuit television at the time of trial); *Russell v. State*, 146 S.W.3d 705, 715–16 (Tex. App.—Texarkana 2004, no pet.) (applying the doctrine to a trial court's denial of a mistrial based on a juror's response to a question by defense counsel); *Orona v. State*, 52 S.W.3d 242, 248–50 (Tex. App.—El Paso 2001, no pet.) (applying the doctrine to the trial court's failure to include prior convictions in the application paragraph of the jury charge because the defendant invited the error through objections to the introduction of the stipulation before the jury and any mention of the prior convictions in the jury charge); *Hirad v. State*, 14 S.W.3d 351, 351–52 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd) (applying the doctrine to a defendant's request for a specific issue in a jury charge).

5

In another case, the defendant filed a motion to recuse the trial judge in his case because the same trial judge had signed the arrest and search warrants for the defendant and had subsequently determined the existence of probable cause. *Franks v. State*, 90 S.W.3d 771, 779 (Tex. App.—Fort Worth 2002, no pet.). Judge Gill testified at the recusal hearing, and the judge who presided over the hearing denied the defendant's motion to recuse. *Id.* at 779–80. The defendant subsequently moved for Judge Gill to reconsider his ruling on a previous suppression motion and called Judge Gill to testify at the hearing on the defendant's motion. *Id.* at 780. When Judge Gill refused to do so, the defendant introduced into evidence Judge Gill's testimony from the recusal hearing. *Id.* On appeal, the defendant argued, based on the introduction of Judge Gill's testimony into evidence, that his conviction was void because a judge who presides over a proceeding is prohibited from being a witness in that proceeding. *Id.* at 780–81. We held that the defendant was estopped from complaining on appeal about the admission of testimony that he had requested, and we observed that the doctrine of invited error applies "whether or not the error is perceived to be fundamental." *Id.* at 781–82.[4]

---

[4] In an unpublished decision from this court, an appellant complained that his Sixth Amendment right to confrontation and cross-examination had been violated because the trial court had considered a presentence investigation report, which he had requested, during the sentencing phase of his trial.

6

**B. Analysis**

After the State, Degadillo, and the trial court had asked questions of the veniremembers and made final selections, the trial court announced the twelve jurors and excused the panel from the courtroom. The trial court then briefly spoke to the jurors and excused them for the day. As the jurors exited the courtroom, one of them told the trial court that his religion would not let him find someone guilty of a crime.

After the trial court and Degadillo's attorney questioned the juror at some length, the trial court told the State and the defense that he could get another veniremember back, if they wanted her on the jury. Degadillo's attorney stated, "I'd rather have 12," and the State replied, "I got no problem with that." The veniremember was brought to the bench, and after she agreed to be on the jury, the trial court swore her in.

The trial court then discussed with counsel what had happened. He stated that it was his "legal position that [the original veniremember] is not legally qualified to serve under 35.16. Does anyone have any argument with

*Hamlin v. State*, Nos. 02-04-00240-CR, 02-04-00241-CR, 02-04-00242-CR, 2005 WL 3436523, at *1 (Tex. App.—Fort Worth Dec. 15, 2005, no pet.) (mem. op.) (not designated for publication). We rejected the defendant's argument for several reasons, including the doctrine of "invited error." *Id.*

7

that as a matter of law?" Degadillo's attorney answered, "No, Judge," and the State answered, "State does not." The following exchange then took place:

[Trial Court:] For legal purposes, I've brought in—I've excused Juror 13 because I had brought back Juror 38 who would have been No. 12, the next in order. . . . And *I've been requested by the parties to swear her and proceed with a jury of 12 if the law allows.* Is that correct, State?

[State:] Yes.

[Trial Court:] *Is that correct, Defense?*

[Defense:] *Yes, Your Honor.*

[Trial Court:] *And both sides are specifically requesting to have her sworn belatedly*, and I'll reswear the whole panel in the morning before any testimony.

[State:] That's fine.

[Trial Court:] *And the parties are requesting that I do that.* Is that correct, State?

[State:] State is.

[Defense:] *That's fine, Your Honor.*

[Trial Court:] *And, Defense, I assume the parties are objecting to going forward with just 11 since 12 came back so promptly and thinks it's going to be fixed by just swearing the panel again since there's been no testimony or evidence and I didn't even read the blue card.* Is that the position of the State for now?

[State:] Yes, for now, yes.

[Trial Court:] *And the Defense?*

8

[Defense:] *Yes.*

[Trial Court:] And both sides understand if we go on with 12, it is my considered opinion that any Court with a conscience and that follows the spirit of the law would say *if you wanted to complain, you should have complained before the 12th juror . . . was placed on the panel or you would be forever barred from doing so since it was done at your request. Is that the way you would interpret the law*, [State]?

[State:] Yes.

[Trial Court:] *Defense?*

[Defense:] *I think so, Your Honor. The one thing I would like to do with No. 12 in the morning is maybe ask her a question or two if she discussed the case or anything after she left before she took the oath.*

[Trial Court:] Are they still back there?

[Defense:] Yes.

[Trial Court:] Let's do it now. I need her right back out here real quick. [Emphasis added.]

The trial court then had the juror brought back into the courtroom and asked her some questions about whether she had heard or discussed anything about the case after the court had excused the panel; the juror said that she had not.

The next day, the following exchange took place:

[Trial Court:] At the close of proceedings yesterday, we had the unusual event where a juror, or a chosen juror, instead of go[ing] from the jury box to the jury room with his 11 companions walked straight up to the bench and states a legal disqualification from service. That record is pretty clear, and it doesn't need to be

9

re-invented at this time. And the parties did state they were in agreement the juror was not qualified, and was disqualified, to serve.

Had the trial commenced, there are cases that say[] a major disqualification can be a disability from service in the same manner as a medical condition or any other matter that happens. State's agreed to proceed with 12. *The Defense has requested to go on with 12.* And at their request, I summoned the next juror in line who would have served according to the clerk's list after strikes were made and Juror 38 came up to replace Juror 13. And the State said they did not object to the procedure. *The Defense said they specifically didn't object to the procedure and objected to going on with 11 at this point in the proceedings because as it was, in their opinion, it was not required.* And everyone has agreed or requested to plug Juror 38 into the hole created by the disability or disqualification of Juror 13. The only person I didn't ask if they're okay with this was the Defendant.

*And since it is your trial, Mr. Delgadillo, do you request to go forward with 12 and have that other juror plugged in to fill the gap made by Juror 13?*

[Defendant:] *Yes, sir.*

[Trial Court:] *And you agreed and asked me to follow your lawyer's request to proceed with 12 instead of just go on with 11; is that correct?*

[Defendant:] *Yes, sir.*

[Trial Court:] I did some research over the evening, and I had a little bit of concern of the legal benchmark that's used for jeopardy purposes about the jury being sworn in a jury trial is when jeopardy attaches versus the first witness testifies in a bench trial. And I got so wrapped up in jeopardy law I didn't look at general law.

And general law states the order of trial in Article 36.01 of the Code of Criminal Procedure. And 36.01, which states the order of

10

trial, says a trial shall proceed in the following order: Number one, the indictment or information shall be read; number two, pleas are entered. Even though the jury was sworn, and I do believe as a matter of constitutional law means jeopardy is attached, the trial hadn't started. Parties haven't announced ready after the jury was impaneled, the indictment hadn't been read, no pleas had been entered. So the Court's opinion under 36.01, the trial actually hadn't started, just the jury selection process is concluded. Both sides comfortable with that interpretation for purposes of the hearing today?

[Defense:] Yes, Your Honor.

[State:] Yes, for today, yes.

[Trial Court:] And 36.29, which talks about proceeding with 11 instead of 12. Says not less than 12 can render a verdict concurred by each juror, signed by the foreman. But it says after the trial of a felony case begins and then a juror becomes disabled from sitting as determined by the judge or dies, then you can go on with 11. But the Court's position of 36.29, after the trial begins means after the indictment is read and the plea is entered, looking at 36.01.

So for our generic term of "trial begins," that is a -- the trial begins for the Court and the lawyers basically when you hear pretrials and pick juries and do a lot of other things. But for statutory purposes of 36.29, which talks about after the trial begins, if it didn't originally refer to the fact that after the jury has started working and doing their jobs, it would be absurd to believe it could apply to the earlier proceedings like voir dire because there wouldn't be 12 people to have to lose one and go on with 11.

So the plain reading of the statute, in my opinion, means that the trial has not begun for purposes of the number of jurors. Parties have agreed, and the *Defense has specifically requested, to replace the other juror since the trial hasn't begun and doesn't believe the Court is bound by the go-on-with-11 procedure. And with that reading of the statute and based on the request of the Defendant*,

*I'm going to honor their request based on the literal reading of the statute.*

*I will state, however, it is still my position, and I assume, Mr. Henderson, it would be yours, that if it were to turn out the Court's judgment is interpreted as legally incorrect at some future date, you and your client would be hard-pressed to complain about getting a remedy that you asked for, fought for and turned out were not legally entitled to. And I would expect this would be a dead issue on appeal. Would that be your opinion?*

[Defense:] *Probably would be, Judge, but it wouldn't permit -- if there's an appellate lawyer that wanted to take this appeal, I don't think it would keep them from trying to fight it.*

[Trial Court:] *And I guess that's my point as well, but I guess my point is, if there is a complaint, I consider this to be a waiver.*

[Defense:] *I think so, too, Your Honor.*

[Trial Court:] *And does your client understand that as well that -- Mr. Delgadillo, if some other lawyer wants to say, no, you should have gone on with 11 or started over, my opinion, by saying I want to go on now with the 12 people, some other court is not likely to give you any relief because you asked to get this extra juror to have 12 and you can't complain later about having 12 instead of 11. They will say you can't have your cake and eat it, too. You can't complain about things that you requested as opposed to complaining about those that were forced upon you over your objection. Do you understand what I'm saying?*

[Defendant:] *Yes, sir.*

[Trial Court:] *And so there is a risk to going on with 12, as you've said, in case it turns out the law says we should have gone on with 11. You are getting an extra juror at your request who will have to vote guilty before you can be convicted. So now 12 instead of 11 people will have to agree. So one more person will have to agree before you can be convicted. Do you understand that?*

12

[Defendant:] *Yes, sir.*

[Trial Court:] *And you consider that an advantage such that, if necessary, you will waive your right to complain about not having 11 people decide your fate. Do you understand that?*

[Defendant:] *Yes, sir.*

[Trial Court:] *And, Counsel, you concur with what I just told your client as a matter of practical law?*

[Defense:] *Yes, sir.* [Emphasis added.]

Despite the trial court's discussion of waiver, and despite Degadillo's assertion that he "attempted to waive any complaint about a [twelfth] juror after the first twelve . . . jurors had been seated and sworn and one of the twelve sworn jurors was disqualified," this is not a case of waiver; instead, it is an obvious case of invited error. The emphasized portions of the exchanges above make clear that both Degadillo and his attorney explicitly requested that the trial court substitute the excused veniremember for the disqualified juror and that they explicitly agreed with the trial court's decision to do so. That is, since Degadillo and his attorney actually requested the procedure for replacing the disqualified juror, the doctrine of invited error estops Degadillo from now complaining about the trial court's actions, even if those actions were "fundamental error." *See Prystash*, 3 S.W.3d at 531; *Druery*, 225 S.W.3d at 505–06; *Norton v. State*, 116 Tex. Crim. 48, 50, 31 S.W.2d 1087, 1088

13

(1930) (noting that "[a] litigant on appeal or writ of error may not seek a reversal for error which he himself has committed or invited, even though the error is fundamental"); *Franks*, 90 S.W.3d at 781. We overrule Degadillo's first issue.

## IV. Closing Argument

In his second issue, Degadillo argues that the trial court erred by overruling his request that the State make an opening argument at the conclusion of the guilt-innocence phase of the trial. At that phase of the trial, after both sides rested, the trial court read the charge to the jury. The trial court asked whether the State intended to open with a closing argument, and the State said, "State will waive opening, reserve right to close." The defense requested that the State be required to make a "full opening statement" and asserted that case law required it, though the defense could provide no authority for that assertion. The trial court stated, "In the absence of authority which mandates it, I'm going to allow them to waive opening." The defense then made its closing argument, and the State followed with its closing argument.

### A. Standard of Review

The code of criminal procedure provides that "[t]he order of [the] argument may be regulated by the presiding judge; but the State's counsel shall

14

have the right to make the concluding address to the jury." TEX. CODE CRIM. PROC. ANN. art. 36.07 (Vernon 2007). We reverse a trial court's decision on such matters only if there was an abuse of discretion. *See, e.g., Threadgill v. State*, 146 S.W.3d 654, 673 (Tex. Crim. App. 2004) (holding that the trial court did not abuse its discretion by denying the defendant's request to close arguments); *Margraves v. State*, 56 S.W.3d 673, 684 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (holding that the trial court did not abuse its discretion by allowing the State to waive its opening and by refusing to give the defendant an opportunity to rebut the State's closing remarks).

**B. Analysis**

Although Degadillo argues that the State should be required to make an opening argument at the close of the guilt-innocence phase of trial, he nevertheless concedes that "existing authority is against him on this issue." He is correct.

*Margraves* is directly on point. In that case, the defendant argued that the trial court erred by allowing the State to reserve its entire closing argument for rebuttal. 56 S.W.3d at 683. But the appellate court noted that "[t]here is clearly nothing on the face of [art. 36.07] that requires the prosecution to open closing argument" and also noted the similarity between the case before it and

15

an earlier decision from the Texas Court of Criminal Appeals.  *Id.* at 683–84

(citing *Norris v. State*, 902 S.W.2d 428 (Tex. Crim. App.), *cert. denied*, 516

U.S. 890 (1995)).[5]  The court observed that, unlike the appellant in *Norris*,  the

defendant had not offered a bill of exceptions, but the case was otherwise

"substantially similar" to *Norris* in that each defendant essentially contended

that the trial court's denial of rebuttal rendered his trial "fundamentally unfair."

*Id.* at 684.  Thus, the court concluded that the trial court did not abuse its

discretion by allowing the State to waive its opening and by refusing to allow

the defendant an opportunity to rebut the State's closing arguments.  *Id.*

Degadillo's argument is "substantially similar" to the arguments made by

the defendant in *Margraves*, and, as in *Margraves*, Degadillo did not offer a bill

of exception, nor did he specify any harm that would come from the State not

---

[5] In *Norris*, too, the State did not make a closing argument until after the defendant made his.  902 S.W.2d at 442.  The trial court denied the defendant's request to rebut the State's arguments, and the defendant offered bills of exceptions showing what he would have argued had he been permitted to answer the State's arguments.  *Id.*  The defendant argued on appeal that the trial court had erred by refusing to allow him to rebut the State's closing arguments.  The Texas Court of Criminal Appeals rejected his argument, noting that his bills of exceptions did not show that his trial was "fundamentally unfair."  *Id.*

having made an opening argument.  Thus, we conclude that the trial court did not abuse its discretion, and we overrule Degadillo's second issue.[6]

## V.  Conclusion

Having overruled both of Degadillo's issues, we affirm the trial court's judgment.


BOB MCCOY
JUSTICE


PANEL B:   LIVINGSTON, DAUPHINOT, and MCCOY, JJ.

PUBLISH

DELIVERED: June 26, 2008

---

[6] Degadillo argues that the rules of civil procedure recognize

> in civil cases involving money damages that fundamental fairness requires a full opening of the case by the party with the burden of proof.  It is an abuse of discretion by the Trial Court in a criminal case where life and liberty are at stake, to have a lesser standard.

He fails to recognize, however, that the rules of civil procedure and the code of criminal procedure have very different requirements for arguments. *See* TEX. R. CIV. P. 269; TEX. CODE CRIM. PROC. ANN. art. 36.07.  Because this is a criminal case, our decision must be based on the latter, which does not require the State to open.

17